# WASHINGTON, ALEXANDRIA, & MOUNT VERNON RAILWAY COMPANY *v.* FINCHAM.*

---

APPEAL AND ERROR; EXPERTS; RAILROADS; NEGLIGENCE; DIRECTION OF VERDICT; INSTRUCTIONS TO JURY.

1. The admission, in a personal injury action against a railway company,

---

* *Evidence—Photograph.*—For cases upon the use of photographs as evidence, see note to *Dederichs* v. *Salt Lake City R. Co.* 35 L.R.A. 802; upon the effect and conclusiveness of photographs introduced in evidence, see note to *Higgs* v. *Minneapolis, St. P. & S. Ste. M. R. Co.* 15 L.R.A.(N.S.) 1162.

of irrelevant evidence, such as a photograph of the wagon in which plaintiff was riding when injured in the railway accident, taken many months after the accident and after the wagon had been repaired, which evidence could have had no influence on the verdict of the jury, is harmless error, for which the judgment will not be reversed.

2. Evidence of a specialist as to the result of an examination by him of the plaintiff's eyes and ears more than a year before the trial of an action for personal injuries, but after the plaintiff was injured, in which action the plaintiff claims his sight and hearing were good before the accident, is properly admitted, where there is nothing in the record to show that such examination was not made for treatment of the ailment, or was made merely to elicit evidence for use in the trial, and although the testimony of the witness was partly based upon statements made to him by the plaintiff.

3. Refusal to direct a verdict for defendant in an action against an electric railway company for personal injuries resulting from a collision between a car of the defendant and a wagon in which the plaintiff was riding is proper, where the jury are permitted to view the scene of the injury, and where the evidence is conflicting as to the distance of the car when the wagon reached the track, and whether by the exercise of ordinary care, under the circumstances, the motorman could have stopped the car, after he saw the wagon on the track, in time to have avoided the collision, as it cannot be said that but one reasonable conclusion, and that in favor of defendant, could be arrived at from the evidence. (Citing *Washington R. & Electric Co.* v. *Cullember,* 39 App. D. C. 316.)

4. In an action for personal injuries, that part of an instruction requested by the defendant which relates to the question of comparative negligence is properly stricken out by the trial court, where there is no such question involved in the case.

5. Substitution by the trial court of a different instruction for one asked by the defendant in an action for personal injuries is not reversible error, where there is no substantial difference in meaning between the two instructions, and where all possible misunderstanding by the jury is prevented by the language of the general charge.

No. 2495.   Submitted April 11, 1913.   Decided May 5, 1913.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for personal injuries.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment in an action for damages for personal injuries.

By reason of the defendant's motion to direct a verdict, and the exception taken to the denial of the same, the evidence is set out at length in the bill of exceptions.

Evidence on behalf of plaintiff tended to show the following: Plaintiff, William Fincham, was night foreman at the Knox Express stables, in the city of Washington. On June 10, between 7 and 8 P. M., he with two others, started in a "horse ambulance" wagon across the highway bridge to bring back a sick horse from the Virginia side of the river. The wagon was a large one, 8 feet and 8 inches wide from hub to hub of the hind wheels. It was very heavy and drawn by two large draft horses. One Smith was the driver; an employee named Shore sat on the seat with him; plaintiff stood up just behind them. The wagon crossed the bridge, and drove alongside the defendant's tracks, which cross the bridge and occupy a part of the highway on the Virginia side. It had rained during the day and was "misty" or "drizzly" at the time. There was a light in the wagon. The wagon had a hood extending over the front end. After crossing the bridge the road gradually narrows between the railway tracks and the curb on the north, or west side. Wagons are accustomed to cross the tracks to the south, or east side after crossing the bridge, at several points. Some evidence tended to show that the wagon kept on the north, or west side until the way became narrow and the wheels scraped the curb. The bridge is well lighted, but the lights stop a little distance from the end. The grade rises gradually from the Virginia side. Poles which bear the trolley or telephone wires are about 54 feet apart. Somewhere near the second pole the wagon turned to cross the tracks. No car and no light were seen. Just as the left horse got upon the second, *i. e.,* south or east track, a car appeared about 50 feet away. The driver whipped his horse, but the car struck the horse and wagon, killing one horse and one of the men (Shore). Plaintiff was thrown out. He received cuts on

the head, his ear was partly severed, and his shoulder and collar bone badly fractured. His sight and hearing had been good to that time, and was very much impaired, and has remained so during the intervening period. Smith was ordered by plaintiff to drive the wagon; the other man was taken along to help handle the sick horse. Plaintiff testified to a sharp lookout; that the car was dark; there was nothing but darkness to prevent his seeing the car. There is a curve in the track near about where the collision occurred. The car was bound for Washington, and had a second car attached. The wagon weighed 3,450 pounds; its length from pole to gate was 24 feet 6 inches. A party waiting to catch the car saw the wagon get on the first track, and saw the car about 100 feet away; 50 feet from the first curve. The car was plainly visible to witness, and was about 50 feet away when the wagon and horses got on the track in front of it.

The speed of the car was variously estimated at from 6 to 10 miles an hour at the time. It was moving up grade, and preparing to stop and take on the passengers who had signaled. The car was supplied with air brakes. Several former motormen on this line and others testified that a car moving from 6 to 8 miles an hour could be stopped within 8 and 12 feet; at 10 miles an hour within 15 and 20 feet. The use of sand and reverse current would help in case of emergency. The driver of the wagon testified that he followed the side of the road he was on until it began to close in, then he started across the tracks, moved at a jog trot, about as fast as a man walks. When he got on the second track he saw the car about 50 feet away. There was no way to draw back, or get out of the way. If there was a headlight on the car he did not see it. He was under the lights, and they may have "kind of blinded him." When plaintiff saw the car he told witness to get out of the way as quick as he could.

Evidence tended to show that the wagon tongue was broken; the front of the wagon damaged; iron supports of the top $2\frac{3}{4} \times \frac{1}{2}$ inches were knocked out and bent; front axle was seriously

bent on right side; the right front wheel was partly broken down; some spokes broken out.

During the trial the jury were taken out to the place of the collision, and permitted to view the surroundings. There was evidence showing great pain suffered by plaintiff as the result of his injuries; partial loss of an ear; permanent injuries from the broken shoulder; and serious impairment of· sight and hearing. At the conclusion of plaintiff's evidence the defendant moved a direction to find for the defendant. This being over-ruled, testimony was introduced by it. Defendant introduced witnesses to contradict statements made by plaintiff to the surgeon of the defendant, who treated him. A passenger on the car testified that it was not dark at the time of the collision, about 7:55 p. m., June 10; that the jar was not sufficient to throw them from the seat; seemed as if the car was pushing something, "instead of a blow it was a push." A witness waiting to stop the car near the bridge had signaled it. The car slowed down. Saw the wagon coming in a pretty brisk trot; thought it would go on by the car. The car was near stopping; instead of his keeping to the right, just before he got to the car the driver pulled his horses deliberately to the right in front of the car. Witness was about 20 yards from the end of the bridge at the time; car had a headlight burning; there was plenty of room for the wagon to go by; instead of going by the driver pulled his horses immediately in front of the car. Defendant's motorman testified that at the second curve below the bridge he saw a wagon "just passed the draw on the bridge;" Proceeding he saw two colored passengers standing near the end of the bridge. Saw the wagon and those passengers at the same time, blew whistle for crossing just before he got to the curve; two longblasts blown for the crossing where the accident occured, a square or more before reaching it. When the passengers signaled the car to stop, answered with two blasts of whistle; slowed down to take on the passengers as well as to look out for wagon; which was driving at unusually fast speed on the right-hand side; did not think the wagon intended to cross over, and kept on to stop for the passengers; when wagon got

about 10 feet in front of car, it swung right around in front of the car, reversed power and used sand; had no time to make noise with whistle or gong; already had the brake partly applied; nothing else he could do to avoid accident; electric headlight was burning, car was lighted inside; car struck one of the horses, and the hood of the wagon, wheels of wagon not on track; stopped his car instantly, as nearly as he could get it; his hands were in place, and all he had to do was to pull back reverse bar and feed controller; was not dark, satisfied he could see as far across the bridge as at noon; slightly misting, but not raining; mist interferes with stopping, makes a slime on rails that is slippery; lighted car could have been seen as far as Arlington Junction; could have seen an unlighted car; was running about 6 miles per hour; released the brakes when current was reversed, as that was necessary.

Other witnesses testified to the lighted headlight. A passenger testified that he heard signal whistles, looked out of window, and another whistle blew quick and sharp; looked again and saw some object go by and across in front of the car; car came to a sudden stop; got out and found the car had hit a wagon; saw two men picked up and another taken out of the wagon; "while they were picking the man out of the wagon, I stepped off, as nearly as I could, the distance the men were thrown or slid or rolled, that is the place from where the wagon was to where we picked them up and the distance that the wagon had been dragged or turned around as marked by the wheels on the curbing to the distance from the time the first whistles were blown, which was about 20 paces." Cross-examined he said "that when the whistle was blown he had to look out, that he stepped off the distance from the place of collision to the point where the whistle was first blown, and found it to be 20 paces;" stepped about 3 feet at a pace.

This was the tenor and effect of the evidence on material points. Defendant again moved the direction of a verdict on the whole evidence, which was denied. The jury found for the plaintiff, assessing damages at $5,000.

*Mr. John S. Barbour, Mr. D. S. Mackall,* and *Mr. Basil D. Boteler* for the appellant.

*Mr. Rossa F. Downing* and *Mr. George A. Berry* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first error assigned relates to the introduction of evi-- dence. After offering in evidence certain photographs of the south end of the bridge and the road and tracks, poles, etc., which were not objected to, plaintiff offered another, showing the wagon drawn by one of the horses hitched to it at the time of the accident, and another; the same wagon after repair. It showed two men on the seat and plaintiff standing up in the place testified to by him. Defendant objected "on the ground that it was supposed to have been taken eighteen months after the accident, and after the vehicle had been repaired, and with different horses attached." The photograph was irrelevant. It tended to shed no light upon any issue in the case, and should not have been admitted. The error, however, was an utterly harmless one. Looking at the picture might possibly have relieved the monotony of the trial, but it could have had no influence on the verdict.

2. The second assignment of error based on exception to the refusal to exclude certain evidence presents a different question. Plaintiff had testified to having good sight and hearing before the accident; and to the serious impairment of both thereafter, continuing to the time of trial. Other witnesses familiar with him before and after corroborated him. There was no contradiction. The accident occurred June 10, 1910; the verdict was returned May 12, 1912. An eye, ear, and throat specialist was offered by the plaintiff, who testified that he examined plaintiff March 27, 1911, and found his vision reduced about one fifth of the normal vision; his hearing very much reduced in the left ear; not likely hearing will get better;

if a man received a blow over the eye, and remained unconscious for five or six days, and immediately thereafter realized that his sight and hearing were affected, and it was apparent to others that they were affected, witness would say that the accident was the cause of the defects. (There had been evidence to these facts.) Witness was then asked how the range of vision is tested by a perimeter. He explained that the patient is seated with his head in a rest, and fixes his vision on the center of a disk on a line with his eyes. This a movable apparatus divided into degrees. In moving this up, "if he sees it here and it is marked 20, then we indicate the fact on the chart 20 degrees." If he sees at 40 we indicate that on the chart. This can then be revolved in a horizontal direction, and in that way we map out all the directions, horizontal, oblique, etc. Cross-examined by defendant, witness was asked how it is ascertained if the patient is telling the truth about it? Witness replied: "If a man understood this instrument, and knew its use, and had seen it before, he could misinform me, for I must depend to a considerable extent on his statement. He might misinform me if he was acquainted with its use, but patients seldom see these things. Of course, if he had access to and practice with an instrument he could very readily misinform me." Defendant then moved to exclude the evidence "because it is necessarily hearsay evidence obtained for the purpose of producing testimony before the court."

The objection assumes that this examination was made to elicit evidence for use in the trial merely,—an assumption for which there is no foundation in the record. The examination occurred more than a year before the trial. Had it not been for treatment of the ailment, the fact could and should have been elicited when the witness was under cross-examination. There was no error in refusing to exclude the evidence. *Northern P. R. Co.* v. *Urlin,* 158 U. S. 271–275, 39 L. ed. 977–981, 15 Sup. Ct. Rep. 840. See also *Fleming* v. *Springfield,* 154 Mass. 520–522, 26 Am. St. Rep. 268, 28 N. E. 910.

3. There was no error in refusing to direct a verdict for defendant at the close of the evidence. The court charged the

jury that there was no evidence of actionable negligence on the
part of the defendant prior to the time that plaintiff went or
was driven on the track; and that the only negligence contended
for by plaintiff on the part of the defendant is in failing to use
reasonable care in stopping the car after the motorman saw
the team upon the track; and question as to the headlight or the
speed of the car had been eliminated. There was a conflict in
the evidence on the issue, relating to the distance of the car
when the wagon reached the track, and whether the car could
have been stopped in time, under the circumstances, to pre-
vent the collision, by the exercise of ordinary care. It cannot
be said that but one reasonable conclusion could be arrived at
from the evidence, and that conclusion in favor of the defend-
ant. Under no other conditions could the court take the case
from the jury. Moreover, the jury had been permitted to visit
the scene of the accident and view the surroundings, which had
remained unchanged.

4. The first special instruction given for the plaintiff sub-
mitted this issue fairly to the jury, and the exception to it was
not well taken.

5. The defendant's sixth special instruction reads as follows:
"The court instructs the jury that if they believe from the evi-
dence that the plaintiff's injury was caused by the concurrent
negligence of the motorman and either the plaintiff or Smith,
due to each failing to keep a proper lookout or otherwise, they
must find for the defendant, *even though they may think the
motorman was more to blame than either Smith or Fincham.*"

The court modified this instruction by striking out the words
which have been italicized, for convenience, in copying it; and
to this modification exception was taken; no special ground
of objection being stated. There was no error in the modifi-
cation. There was no question of comparative negligence. The
court had given an instruction for the defendant to the effect
that there was no actionable negligence on the part of the de-
fendant prior to the time that plaintiff went or was driven upon
the track. Again, in stating the issue it was said: "It elimi-
nates every other question of negligence except that of the

defendant, after its motorman had seen the position that plaintiff was in. If he was negligent in stopping the car, if he had time, then there was negligence." It was added that the defendant owed no duty to foresee his negligence in going upon the track, nor until the motorman saw that the wagon was being actually driven upon the tracks at a point where collision could not be avoided, unless the car could be stopped; or too late to stop the car, or the motorman used all the means at hand to stop but failed, the verdict should be for the defendant. Also the jury were charged that if the injury was caused by the concurrent negligence of the motorman and the plaintiff or his driver, due to each failing to keep a proper lookout, or otherwise, the verdict must be for the defendant.

6. The last assignment of error is on the refusal of the defendant's seventh special instruction:

"The court instructs the jury that preponderating proof that the defendant was negligent in trying to stop its car after discovering the plaintiff's peril, and that such negligence contributed essentially to the injury of the plaintiff at the time, place, and manner therein set forth, are essential to the plaintiff's right to recover, and if the evidence fails to preponderate on either of these points in favor of the plaintiff, or is equally balanced on either of these points, or preponderates in favor of the defendant on either of these points, then their verdict must be in favor of the defendant."

Instead, the court gave the following:

"The court instructs the jury that burden of proof is upon the plaintiff to establish that the defendant was negligent in trying to stop its car after discovering the plaintiff's peril, and that such negligence contributed essentially to the injury of the plaintiff at the time, place, and manner set forth in the plaintiff's declaration, and if the evidence fails to sustain such burden of proof on either of these points in favor of the plaintiff, or is equally balanced on either of these points, or preponderates in favor of the defendant on either of these points, then their verdict must be in favor of the defendant."

We perceive no substantial difference in meaning between the

two instructions. But all possible misunderstanding by the jury was prevented by the language of the general charge. Therein the jury were charged that if plaintiff negligently drove on the tracks, and the motorman negligently ran into him, and the negligence of each was concurrent, then the plaintiff could not recover, "because the burden is upon the plaintiff to establish his case by a preponderance of the evidence." The instruction before given had told them that if the evidence was equally balanced, the verdict must be for the defendant.

We are satisfied that the evidence was such as to require its submission to the jury, and that the charge of the court fairly embodied the governing principles of the law that have been declared by this court in like cases. See *Washington R. & Electric Co.* v. *Cullember,* 39 App. D. C. 316, and cases therein cited.

The judgment is affirmed with costs.        ·        *Affirmed.*