Edward L. **SELLMAN**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 10050.

District of Columbia Court of Appeals.

Argued Oct. 19, 1977.

Decided April 24, 1978.

Marsha E. Swiss, Washington, D. C., appointed by this court, for appellant.

Mary-Elizabeth Medaglia, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Roger M. Adelman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

John C. LaPrade, Washington, D. C., appointed by this court, filed an amicus curiae brief.

Before NEBEKER, YEAGLEY and MACK, Associate Judges.

NEBEKER, Associate Judge:

Appellant was tried by a jury and convicted of rape while armed and sodomy, D.C.Code 1973, §§ 22–2801, –3202, –3502. He asserts that the trial court erred in refusing to grant his motion for verdict of acquittal; in refusing to admit certain documentary evidence; and in permitting the government to elicit testimony which, it is asserted, tended to reveal that appellant had been involved in a murder.[1] We affirm.

The victim in this case could not identify appellant as her assailant. She did, however, identify one Simmons as one of the two men involved, and she testified that the two men were in a green Volkswagen automobile. The government introduced evidence that appellant owned such an automobile at the time of the crime. Simmons, in turn, identified appellant as his accomplice in the crime. Simmons testified that

---

1. Other claims of error raised have been fully considered and found to be without merit.

he and appellant had been good friends for about five years, had left the police force at about the same time (four years before this trial), had spent a substantial amount of time together, and had participated in the theft of the gun used in this offense. He then related to the jury the events of June 28, 1971: that he and appellant were driving appellant's green Volkswagen, that they saw a woman standing on a street corner and forced her at gunpoint to ride with them, and that they raped and otherwise sexually assaulted her in the car before releasing her. The government, foreseeing potential impeachment elicited Simmons' testimony that he had been convicted of first-degree murder and kidnapping.

On cross-examination, Simmons was asked whether, in his trial for murder, he had lied under oath. He responded that he had. The prosecutor on redirect examination, attempted to rehabilitate his witness. Simmons testified that he had made no bargain with the government for his testimony here and that he had recounted the same version of the facts in the instant case when he was arrested on March 30, 1974. The prosecutor then approached the bench and advised the trial judge and defense counsel that he wanted to rehabilitate Simmons by eliciting Simmons' explanation of the circumstances surrounding his perjury at his murder trial. Defense counsel objected to any elicitation of the facts of the prior case since such facts might tend to convey to the jury the fact that appellant was Simmons' accomplice in the murder. The jury was excused and a lengthy bench conference followed. The trial judge was of the opinion that the prosecutor's proffer was proper rehabilitation evidence, but also recognized that "[i]f they [the jurors] find out about the fact that he [appellant] is a murderer also, that is going to weigh pretty heavily." The judge, therefore, ruled that Simmons was not to testify that appellant was his accomplice but was to refer to his accomplice only as "another person." Further, Simmons was not to testify that the automobile used in the murder was a Volks-

wagen, nor could he indicate the name of the victim (which had received considerable publicity). The court then recessed for a short time to permit the prosecutor to advise Simmons that he was not to testify to the above-mentioned matters. When court reconvened, the trial judge specifically cautioned Simmons not to testify concerning these matters. The jury was brought back, and Simmons was permitted to relate his testimony as to two versions of the facts surrounding a murder. In the first version, the one given at his own murder trial, Simmons described how he and the other person had disposed of the body after that person brought it by Simmons' home in an automobile; in the second version, the one given as a government witness against that other person, Simmons and that person were both described as having participated in the killing. Simmons then testified that, while the first version had been perjury, the second version was true; the truth of the second version, he said, was corroborated by the fact that he had related that version when he was arrested on March 30, 1974. The "true" version involved Simmons and "another individual" riding together in an automobile, picking up a person, and subsequently killing that person.

In his defense, appellant called a police officer, Sergeant Welch, who testified, on voir dire, that an Officer Verbash had submitted to him a completed Police Form 251 ("Report of Crime") which Sergeant Welch signed as "supervisor." Officer Verbash was no longer a member of the police force and was unavailable to testify, although what purported to be his signature was at the bottom of the form. The report, offered as a business record, stated that the victim had described her assailants as being approximately five feet, seven inches tall [2] and driving a Volkswagen with District of Columbia license plates. Appellant's proffer was that his Volkswagen bore Maryland license plates. The trial court ruled that the report and its contents were inadmissi-

---

**2.** This facet was actually a part of the description of Simmons; the other assailant was described as "same general," implying that the two were approximately the same height.

ble except to impeach the victim if she again took the stand.[3]

■ Appellant's first argument is that his motion for acquittal should have been granted because Simmons' identification of him was uncorroborated and, therefore, insufficient. Appellant relies upon the "well established general rule in this jurisdiction that for conviction of a sex offense the testimony of the victim must be corroborated both as to the corpus delicti and the identity of the accused . . .." *United States v. Jenkins,* 140 U.S.App.D.C. 392, 394, 436 F.2d 140, 142 (1970) (footnote omitted). Even if the eyewitness in this case had been the victim instead of an accomplice, however, the rule is no longer as stated in *Jenkins. Arnold v. United States,* D.C.App., 358 A.2d 335 (1976). The trial judge properly denied appellant's motion.

■ Appellant next asserts that the trial court erred in denying admission of the police report of the crime. We assume, arguendo, that appellant's foundation for the report as a business record was adequate. *See United States v. Smith,* 172 U.S.App.D.C. 297, 521 F.2d 957 (1975) (construing 28 U.S.C. § 1732 [amended 1975] and Fed.R.Evid. 803(6); *see* Super.Ct.Civ.R. 43–I); *Johnson v. Lutz,* 253 N.Y. 124, 170 N.E. 517 (1930) (leading case). The report, however, is hearsay within hearsay. The business records exception to the hearsay rule permits the introduction of the report to prove that the victim described her assailant in certain terms. This exception, therefore, would have permitted introduction of the record to impeach the victim by a prior inconsistent statement had she denied making or memory of making the statement. *See* II Wharton's Criminal Evidence § 468 (13th ed. 1972). But in order for the report to be admissible for the truth of the victim's statement rather than for the fact that she made it, the victim's statement must fall within an independent exception to the hearsay rule. Since appellant proffered no grounds for exception to this hearsay, either in the trial court or on appeal, we need not consider the possible exceptions which might have permitted admission.[4] Nor was the statement properly offered as impeachment of the victim. When the victim testified in the government's case, she made no assertion that was inconsistent with the reported description.[5] The trial court, therefore properly rejected appellant's proffer of the report at this stage. When the victim was recalled by the defense, she, in effect, denied memory of having made the prior statement. Because, however, appellant did not, at that time, reproffer the report, its admissibility as a prior inconsistent statement was not before the trial court and is not before this court.

■ Finally, appellant asserts that he was denied his right to a fair trial when the government was permitted to elicit testimony from Simmons concerning Simmons' testimony at the former murder trials.[6] The government's theory of admissibility, accepted by the trial court, is that Simmons

---

3. Appellant also attempted to introduce the "radio run" derived by Officer Welch from this report. The principles discussed herein with reference to the report are equally applicable to the radio run, which will not be separately analyzed.

4. *Compare* Fed.R.Evid. 801(d)(1)(C) (statement of identification of a person by a declarant who has testified at trial) *with Clemons v. United States,* 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968), and *Mack v. United States,* D.C.Mun. App., 150 A.2d 477 (1959) (prior statements of identification related by a witness during testimony at trial). *See In re Lewis,* D.C.Mun.App., 88 A.2d 582 (1952) (requirement of proper foundation for admission of hearsay as spontaneous utterance).

5. The victim testified that she was unable to describe her assailant except as to weight and height. Neither factor varied substantially from the report description, nor was the report proffered as impeachment of these factors. The victim was not asked about, nor did she testify concerning the license plates of the automobile, the descriptive factor for which the report was proffered.

6. Appellant's trial counsel, amicus curiae on appeal, has argued other factors that allegedly contributed to the denial of a fair trial. These arguments have been carefully considered and found to be without merit.

was permitted to explain the circumstances of the perjury, admitted on cross-examination, in order to "rehabilitate" himself, and that the general question respecting "perjury" at the murder trial left unexplained whether such perjured testimony related to minor or major aspects of that testimony. The only evidence relevant to rehabilitation, however, was the fact that Simmons lied when he was on trial for his own liberty whereas, in the instant case, his liberty was not at stake. The fact that Simmons told the truth about the murder in other circumstances does nothing to explain the perjury in his own case except to make it certain that he did perjure himself. His testimony therefore was irrelevant and inadmissible.[7] *See Levin v. United States,* 119 U.S.App.D.C. 156, 338 F.2d 265 (1964).

▇▇ The erroneous admission of evidence requires a new trial, however, only if the accused was thereby prejudiced. D.C. Code 1973, § 11–721(e); *Fennel v. United States,* 116 U.S.App.D.C. 62, 320 F.2d 784 (1963). Appellant asserts that he was prejudiced by the implication of Simmons' testimony, taken as a whole, that appellant was also guilty of a murder. It is undoubtedly reversible error for the prosecution to introduce evidence of a defendant's prior criminal activity except in impeachment (where the defendant takes the stand), to prove a necessary element of the crime being tried, or to prove other circumstances relevant to issues raised during the course of the trial if the probative value of those circumstances outweighs the prejudice to the accused. *Robinson v. United States,* D.C.App., 317 A.2d 508 (1974); *Wooten v. United States,* D.C.App., 285 A.2d 308 (1971); *Bradley v. United States,* 140 U.S.App.D.C. 7, 433 F.2d 1113 (1969); *Barnes v. United States,* 124 U.S.App.D.C. 318, 365 F.2d 509 (1966). The only issue, therefore, is whether such evidence was put before the jury.

▇▇ A jury need not be told specifically that a defendant has committed other crimes in order to warrant reversal. Yet we will not reverse where improperly admitted evidence requires the jury to speculate that the defendant has committed other crimes. The extent of the gray area between these extremes is well illustrated by cases involving testimony that the defendant was identified through the use of police photographs. In *Barnes v. United States, supra,* the prosecution introduced two photographs of the accused, one in profile and one full face. Both had wide pieces of opaque tape covering material printed at the bottom. Although the witness whose testimony laid the foundation for their admission was specifically directed not to— and did not—refer to them as "mug shots," it was evident that they were. The court held that their introduction implied that the accused had a prior police record and remanded for a new trial. In other cases, however, it has been held that reference to or introduction of ordinary photographs in the possession of the police, if not otherwise bearing indicia of being "mug shots," was permissible. *See, e. g., United States v. Jones,* 155 U.S.App.D.C. 328, 477 F.2d 1213 (1973); *United States v. Clemons,* 144 U.S.App.D.C. 235, 445 F.2d 711 (1971); *United States v. Hallman,* 142 U.S.App.D.C. 93, 439 F.2d 603 (1971). As Judge Leventhal stated in *Hallman, supra* at 94, 439 F.2d at 604:

> A juryman might well conjecture that there must have been prior suspicion of the defendant, else why would the police have his photograph. But we cannot push sound principles to untenable extremes.

The sequence of Simmons' testimony assertedly giving rise to the implication that appellant was guilty of a murder was: that he and appellant had spent most of their free time together; that appellant was the person who committed the crime in this case; that Simmons told the police of his and appellant's involvement in this crime on March 30, 1974; that Simmons and "another individual" murdered someone whom they had picked up in their automobile; and

7. No other ground for admission has been argued by the government. While it is possible that *modus operandi* might have supported admission, the government did not lay a foundation for admission on that basis.

that he had told the police of his and this other individual's involvement in the murder on March 30, 1974. Thus stated, it appears that the jurors' reach need not have remarkably exceeded their grasp of the situation in order to reach the conclusion appellant asserts.

■ Our review, however, is not simply of testimony but of testimony as the jurors heard it. In the "mug shot" cases, the issue before the appellate court was, in essence, a question of law: given the undisputed evidence, would the jurors have drawn the asserted inference? In the instant case, on the other hand, we are presented not only with that question but with review of the trial judge's determination upon a question of fact: were the individual items of evidence presented to the jurors in such a way as to encourage a connection between these individual items in the minds of the jurors? The record reveals that the items of testimony aggregated by appellant were, at trial, spread through lengthy direct examination, cross-examination, and redirect examination. Matters relevant to the trial but not relevant to the question before us were examined and cross-examined in detail. The trial judge recognized the prejudice to appellant if the jury found out that he was a murderer, and he took steps to preclude that potential. And, upon review of the proceedings pursuant to appellant's motion for a new trial, the trial judge concluded that "[i]n allowing this testimony to be developed the court accomplished it in such a manner that the jury did not learn that [appellant] was involved in the murder charge." The trial judge, who heard the testimony as the jurors heard it, is entitled to substantial deference when, as here, the question to be resolved is largely one of fact. We cannot say, as a matter of law, that this record reveals a situation in which a reasonably intelligent juror necessarily would have connected the individual items of evidence. Because we cannot, we defer to the finding of the trial court.

We find no error affecting a substantial right, and the judgment of conviction is

*Affirmed.*