William Joseph SULLIVAN, Appellant,

v.

UNITED STATES, Appellee.

No. 12635.

District of Columbia Court of Appeals.

Argued Nov. 16, 1978.

Decided June 26, 1979.

David C. Niblack, Washington, D.C., appointed by the court, for appellant. Mary Ellen Ashton (LS # 1746), Keith K. Miller (LS # 1923), law student counsels, and James M. Doyle, Supervising Atty., were on briefs, for appellant.

John H. Korns, II, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty. and John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D.C., were on brief, for appellee.

Before KELLY, NEBEKER and MACK, Associate Judges.

MACK, Associate Judge:

Appellant, together with his two brothers, was convicted in Superior Court of simple assault under D.C.Code 1973, § 22–502, arising out of an automobile accident. On appeal, he argues that the trial court erroneously 1) failed to strike the trial testimony of the complaining witness following a Jencks Act hearing; 2) admitted into evidence the entire hospital record of the complaining witness; and 3) failed to permit cross-examination of the complaining witness on the issues of his bias and motive.

On February 1, 1977, appellant, while driving his car in which his two brothers were passengers, collided with a van operated by complainant Thomas Ritter. After the collision, appellant, his brothers and Mr. Ritter met outside the vehicles where a fight ensued. Mr. Ritter claimed that he was struck by appellant while attempting to see the latter's car registration. Appellant claimed that he struck the complainant only after complainant grabbed and threw punches at him. As a result of the fight, Ritter was taken to the hospital, while appellant and his brothers were arrested by police officers called to the scene.[1]

The government's first witness at trial was Thomas Ritter. Following his direct examination by the government, defense counsel, acting pursuant to provisions of the Jencks Act, 18 U.S.C. § 3500 (1970), requested production of any statements made by Ritter to police. The government, in response, denied the existence of any such statements. Then, on cross-examination of the complainant, the following exchange occurred:

[DEFENSE COUNSEL]: [G]oing back to the scene of the incident, were you questioned by the police officer there?
[COMPLAINANT]: When I was back at the scene of the accident.
[DEFENSE COUNSEL]: Before you had been taken to the hospital.
[COMPLAINANT]: I believe someone was asking me questions, yes.
[DEFENSE COUNSEL]: And were they writing down your answers?
[COMPLAINANT]: I believe so.
[DEFENSE COUNSEL]: Do you know the officer's name?
[COMPLAINANT]: I couldn't swear to it, no, sir.

Thereafter the trial court, although questioning the indecisive nature of the witness' answers, held a hearing, outside the jury's presence, to determine whether there were statements made by complainant to the police which would be subject to disclosure to the defense under the Jencks Act.[2]

1. The record is unclear as to which of the many police officers present on the scene arrested appellant, and which others were busy investigating the vehicular collision.

2. 18 U.S.C. § 3500 provides in pertinent part as follows:
(b) After a witness called by the United States has testified on direct examination,

At the hearing, two Metropolitan Policemen, Officers Stradford and Rau, testified. Both had been present at the scene of the accident and fight between the Sullivans and complainant. Both stated that they neither spoke to Mr. Ritter there, nor saw any other officer who did. Officer Rau, who like the complainant suffered injury at the scene of the assault, admitted that he did speak with Ritter at the hospital where they were both being treated. He added, however, that he took no notes of the conversion.

At the close of the officer's testimony, defense counsel argued to the trial court that a prima facie showing of the existence of Jencks Act statements had been made. Defense counsel therefore requested that, in the absence of testimony from any of the other officers present at the scene of the alleged assault (some of whom Officer Rau identified by name in his testimony, and some of whom he could not remember) the trial testimony of the complaining witness be stricken.[3] The trial court, stating that it believed Officers Stradford and Rau, found that no Jencks Act statements were made by complainant, and denied defense counsel's request.[4]

> the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. . . .
>
> \* \* \* \* \* \*
>
> (e) The term "statement", as used in subsection (b), (c), and (d) of this section in relation to any witness called by the United States, means—
> (1) a written statement made by said witness and signed or otherwise adopted or approval by him;
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

**3.** 18 U.S.C. § 3500(d) provides as follows:
 If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant

## I.

We cannot agree with appellant that the trial court committed reversible error in not applying the sanction of the Jencks Act.

■ Certainly, the production at trial by the government of police notes, made at the scene of a crime, is in keeping with the purpose of the Jencks Act,[5] "to aid in the search for truth by facilitating impeachment of the government's witnesses." *Moore v. United States,* D.C.App., 353 A.2d 16, 19 (1976) (footnote omitted). However, where the existence of such notes has been alleged by the defense following a witness' direct examination and denied by the government, it is the affirmative duty of the trial court to determine who is correct,[6] after examining all the available evidence.[7] The factual finding of the trial court as to the existence or not of Jencks Act material may be disturbed on review only if clearly erroneous. *Campbell v. United States,* 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); *March v. United States,* D.C.App., 362 A.2d 691, 702 (1976).

The trial court, reacting to what was defense counsel's attempt to establish a prima facie case, that there existed police notes of the statement of this complaining witness, promptly held a Jencks hearing to

> any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

**4.** The record is clear that, during the course of the trial, the defense was furnished with Jencks Act statements of government witnesses other than complainant.

**5.** *Williams v. United States,* D.C.App., 355 A.2d 784, 788 (1976).

**6.** *Williams v. United States, supra; Leach v. United States,* 115 U.S.App.D.C. 351, 352, 320 F.2d 670, 671 (1963); *Saunders v. United States,* 114 U.S.App.D.C. 345, 348, 316 F.2d 346, 349 (1963).

**7.** *Duncan v. United States,* 126 U.S.App.D.C. 371, 374, 379 F.2d 148, 151 (1967); *Williams v. United States,* 117 U.S.App.D.C. 206, 208, 328 F.2d 178, 180 (1963).

"require the government to come forward with evidence to answer that case." *Williams v. United States,* D.C.App., 355 A.2d 784, 788 (1976), *citing Campbell v. United States,* 365 U.S. 85, 96, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961). At the hearing, the government called two witnesses, both of them policemen present at the scene of the alleged assault, who testified that neither they nor to their knowledge any other officers recorded any remarks made there by the complainant. After the two officers testified, the trial judge found as follows:

There is no reason for me to sit up here and think that either one of the witnesses is telling a lie.

He told me—this officer [Rau] told me that he didn't take it [complainant's statement]. I believe him. He should know. The prosecutor told me he didn't have any statements. I believe him. You [Defense Counsel] are entitled to ask the officers. You did exactly right. I am satisfied that there is no statement. . . . I will give you all the latitude you want to call any of the police officers—eight or nine, I understand—to come in and testify as to any statement.

\* \* \* \* \* \*

[Complainant] used the words, he believed, all the time. It was also said that at the time his head was—he was taken to the hospital. He was bleeding. Blood was in his eyes. There is a question in my mind as to whether he knows about what happened there [at the scene of the crime].

■ It was entirely proper for the court, in weighing the credibility of the witnesses, to find that the officers' testimony overcame any assumption or suggestion that Jencks Act statements of complainant existed. Moreover, under these circumstances the trial court was not required to compel the government to search out and produce other officers present at the scene of the alleged assault to testify at the hearing. "Administration of the Jencks Act must be entrusted to the 'good sense and experience' of the trial judges subject to 'appropriately limited review of appellate courts.'" *Unit-ed States v. Augenblick,* 393 U.S. 348, 355, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969), *quoting Palermo v. United States,* 360 U.S. 343, 353, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). The scene of the crime was by all accounts one of confusion: Some officers were investigating the accident; others were occupied with the fight between the Sullivans and complainant Ritter. The names of most of the police personnel present at the scene were unavailable: Neither government counsel nor the witness Stradford could supply them, Rau offered only two, and complainant was unable to identify the officer to whom he might have made any statements. Under these circumstances, it was not clearly erroneous for the trial court to find that no Jencks Act statement of complainant existed, without hearing additional testimony.

II.

Appellant also argues that complainant's hospital records, made after the alleged assault, were improperly admitted into evidence. First, he maintains that the recorded out-of-court statements of complainant's condition, offered at trial to prove the truth of what they asserted, were pure hearsay. He points out that the Business Records Act, 28 U.S.C. § 1732 (1970), which might arguably have permitted the introduction of those statements at trial as an exception to the rule against hearsay, was repealed upon enactment of the Federal Rules of Evidence in 1975. And he argues that Fed.R.Evid. 803(6), which continues the business records exception in federal district court, does not apply to Superior Court.

■ The business records exception, however, remains codified, not only in Fed.R.Evid. 803(6), but also in Super.Ct.Civ.R. 43–I(a), which states that,

Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such

business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility. The term "business", as used in this section, includes business, profession, occupation, and calling of every kind. (Added June 30, 1975.) [8]

Rule 43–I is applicable to criminal cases in Superior Court. Super.Ct.Cr.R. 57(a).

■ Moreover it is obvious that medical entries as to complainant's condition—his appearance, physical signs such as pulse, respiration, etc., and the resulting diagnosis—constitute a record admissible under Rule 43–I(a). Such entries are routinely made in the "regular course" of admitting patients, and a hospital fits firmly within the rubric of "business, profession, occupation, and calling of every kind," by which Rule 43–I(a) defines a business.[9]

The situation is somewhat different as to the references in Ritter's hospital records as to his "complaint of assault" and to there being "[n]o injury by accident, but after accident, in fight." We agree with appellant that these are statements to which the business records exception does not apply. These references were based upon complainant's version of the cause of his injuries as told to hospital officials—that which he was under no business duty to relate. They were thus unlike the objective medical data recorded by the hospital officials as part of their regular patient work-up. See *Johnson v. Lutz*, 253 N.Y. 124, 170 N.E. 517 (1930), cited in *Sellman v. United States*, D.C.App., 386 A.2d 303, 306 (1978). See also *Smith v. United States*, D.C.App., 337 A.2d

219, 222–23 (1975). In order for us to uphold their introduction for the truth of what they asserted, the references to complainant's cause of injury "must fall within [some other] independent exception to the hearsay rule." *Sellman v. United States*, supra.

■ There is in this jurisdiction such an exception, for out-of-court statements made for the purposes of medical diagnosis. *District of Columbia v. White*, 48 App.D.C. 44 (1918); *Washington & Old Dominion Railway v. Slyder*, 43 App.D.C. 95, 99 (1915); *Washington, Alexandria & Mount Vernon Railway Co. v. Fincham*, 40 App.D.C. 412 (1913). Such statements, which include those describing the cause of a patient's injury, may be introduced even where they are partly based on the patient's own declarations. *Washington, Alexandria & Mount Vernon Railway Co. v. Fincham, supra.* The statements may be offered for their truth, since they contain a "special assurance of reliability—the patient's belief that accuracy is essential to effective treatment." McCormick, Evidence § 292 (2d ed. E. Cleary 1972). The statements must be occasioned by a medical examination not merely "made to elicit evidence for use in the trial." *Washington, Alexandria & Mount Vernon Railway Co. v. Fincham, supra.*

■ These are such references. There is no evidence that complainant went to the hospital for any reason but for treatment. Indeed, his being taken to the hospital directly from the scene of the alleged assault by ambulance suggests that emergency examination was required for treatment of injuries—an objective made easier by any explanation of the cause of injuries. There is no evidence of a deliberate attempt to lay the foundation for expert medical testimo-

---

8. The enactment of the business records exception, Rule 43–I, was accomplished pursuant to D.C.Code 1973, § 11–946. As a procedural rule, 43–I has the full force of law. See *In re C.A.P.*, D.C.App., 356 A.2d 335, 343 (1976); *Campbell v. United States*, D.C.App., 295 A.2d 498, 501 (1972).

9. Such was the law before adoption of Rule 43–I, *see New York Life Ins. Co. v. Taylor*, 79 U.S.App.D.C. 66, 76–77, 147 F.2d 297, 307–08 (1945) (rehearing), a case decided under the Federal Shop Book Rule, ch. 640, § 1, 49 Stat. 620 (1936), which preceded the Business Records Act.

ny in future litigation.[10] There was no assignment of blame.[11] The statements went only to cause of injury, fell within the medical diagnosis exception, and so were properly offered for their truth at trial.

 The fact that complainant's narrative in the instant case was offered through introduction of his hospital records and not through the expert testimony of a physician does not alter its admissibility. We note that Fed.R.Evid. 803(4), which enacted the medical diagnosis exception for use in federal district court,[12] applies to statements "made to hospital attendants, ambulance drivers" and not just physicians. *See* Advisory Committee Note.

 Finally, we are mindful that a decision admitting hearsay evidence against a defendant in a *criminal* prosecution must be careful not to infringe on the right of that defendant "to be confronted with the witnesses against him." U.S.Const. amend. VI. In applying the medical diagnosis exception in the instant case, we note that complainant appeared as a witness for the government, testified as to his injury, and was cross-examined. Thus we find no constitutional problem in upholding the admission of records based on complainant's out-of-court comments. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

10. Narrative statements by a person suffering from an illness or injury made to a physician in order to enable the physician to qualify as a witness in an action where the patient's condition is in issue, and not for treatment or diagnosis with a view to treatment, are commonly excluded as inadmissible hearsay. [Jones on Evidence § 10:7 (6th ed. S. Gard 1972) (footnote omitted).]

11. On the other hand, when statements as to causation enter the realm of fixing fault it is unlikely that the patient or the physician regarded them as related to diagnosis or treatment. In such cases, the statements lack any assurance or reliability and would properly be excluded. [McCormick, *supra*.] *See Simms v. United States,* 101 U.S.App.D.C. 304, 248 F.2d 626, *cert. denied,* 355 U.S. 875, 78 S.Ct. 127, 2 L.Ed.2d 79 (1957); 2 Wharton's Criminal Evidence § 287 (13th ed. C. Torcia 1972). Nowhere on his hospital records is

III.

We turn now to appellant's claim, that it was reversible error for the trial court to prevent cross-examination of the complaining witness (before the jury) as to the existence or possibility of a lawsuit growing out of the automobile accident. Initially, outside the presence of the jury, defense counsel was permitted to ask the complainant:

Q. Have you filed a civil suit to recover your damages that you incurred in this incident?

A. No.

Q. In the course of the automobile accident did you ever file a suit to recover damages as a result of the collision?

A. No.

Q. Do you foresee filing such a suit to recover damages in the near future?

A. No.

Q. Have you retained counsel—a private attorney—to help you pursue any damages that you might be able to recover against the Sullivans?

A. I have an attorney who advises me that he doesn't think we can get anywhere with a civil suit in D.C.

Q. In another jurisdiction?

A. Yes.

Q. Do you forsee filing a suit in another jurisdiction?

A. I don't—

THE COURT: He doesn't know, Mr. Bucci.

there reported any attempt by complainant to fix the fault for his being assaulted on appellant.

12. Rule 803 provides:

HEARSAY EXCEPTIONS: AVAILABILITY OF DECLARANT IMMATERIAL

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*　\*　\*　\*　\*　\*

(4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Appellant argues that such cross-examination is a valid mode of impeachment, tending to show a witness' bias and motive. Certainly, "bias is always a proper subject of cross-examination,"[13] as is motive.[14] At issue here, therefore, is the question of whether the evidence, that the complainant was either bringing or contemplating a civil action against appellant for the accident, was relevant to a showing of his possible bias or motive in testifying against appellant for criminal assault.

It has been the practice in this jurisdiction to allow a "wide latitude" or "range" in cross-examination with respect to a witness' bias and motive. *Springer v. United States,* D.C.App., 388 A.2d 846, 855 (1978); *Best v. United States,* D.C.App., 328 A.2d 378, 381 (1974); *Tinker v. United States,* 135 U.S.App.D.C. 125, 127, 417 F.2d 542, 544, *cert. denied,* 396 U.S. 864, 90 S.Ct. 141, 24 L.Ed.2d 118 (1969); *Wynn v. United States,* 130 U.S.App.D.C. 60, 62, 397 F.2d 621, 623 (1967); *Villaroman v. United States,* 87 U.S.App.D.C. 240, 241, 184 F.2d 261, 262 (1950). And it is accepted that the importance of cross-examining a witness as to his possible bias assumes particular importance where the testimony of that witness is crucial in determining guilt or innocence of an accused. *Springer v. United States, supra.*

■ Great latitude is appropriately extended to a showing of a complaining witness' bias by means of cross-examination concerning that witness' pending lawsuit versus the defendant against whom he has testified. Annot., 21 A.L.R.2d 1078 (1952). *See* McCormick, *supra* at § 40. The seminal case for this proposition is one of this jurisdiction, in which the complainant's civil suit arose out of the very same set of circumstances as the crime for which the defendant was charged. *Villaroman v. United States, supra.* Questions regarding a complainant's civil suit, such as those adjudged as proper in *Villaroman,* are relevant to a showing of his *pecuniary interest* in the outcome of the criminal case[15] and/or his *ill-will* toward the defendant—both recognized manifestations of a witness' bias. 2 Wharton's Criminal Evidence §§ 435–36 (13th ed. C. Torcia 1972).

The rationale of *Villaroman* permits the airing of evidence not merely with respect to a witness' *pending* lawsuit against a defendant. "Even a contemplated suit by a complaining witness may be shown." *Villaroman v. United States, supra* at 241, 184 F.2d at 262 (citations omitted). For a con-

13. *Hyman v. United States,* D.C.App., 342 A.2d 43, 44 (1975), *quoted in Springer v. United States,* D.C.App., 388 A.2d 846, 855 (1978).

14. *Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (citation omitted); *Adams v. United States,* D.C.App., 379 A.2d 961, 963 (1977); *Tinker v. United States,* 135 U.S.App.D.C. 125, 127, 417 F.2d 542, 544, *cert. denied,* 396 U.S. 864, 90 S.Ct. 141, 24 L.Ed.2d 118 (1969). *See Harris v. United States,* D.C.App., 377 A.2d 34, 39 n.7 (1977).

Motive, as a means of impeachment in cross-examination, is "a form of bias." *Tinker v. United States, supra.* We therefore treat the two together in our discussion of appellant's claim, *infra.*

15. "[W]here the issue in the criminal case was clear, the defendant appeared, was represented by counsel, had an opportunity to testify and present his witnesses and to cross-examine the witnesses against him, and was duly convicted, there is no sound reason why the judgment of conviction should not be admitted in a civil case based on the same facts as at least prima facie evidence of those facts." *Stagecrafter's Club, Inc. v. District of Columbia Div. of American Legion,* 111 F.Supp. 127, 128–29 (D.D.C. 1953). *See United States v. Wainer,* 211 F.2d 669, 671 (7th Cir. 1954); *Clemmer v. Hartford Ins. Co.,* 66 Cal.App.3d 207, 135 Cal.Rptr. 848, 864–65 (1977); Annot., 18 A.L.R.2d 1287 (1952).

Under these circumstances a judgment of conviction would be to a complainant's pecuniary advantage, where his civil suit against the defendant involved the same facts as those considered in the criminal case. Admittedly, in the instant case, a civil action would not suggest much in the way of a pecuniary interest, since appellant's criminal conviction for assault could hardly serve to help prove his liability for the accident.

We note, however, that cross-examination of a government witness as to his having a civil action against the criminal defendant has been held to be proper, even where defendant's conviction would probably not be admissible in that civil action as an aid to establishing defendant's liability. *See State v. Michelski,* 66 N.D. 760, 268 N.W. 713 (1936).

templated suit, like a pending one, is relevant to a jury's gauging the degree to which discrediting factors of bias—*e. g.*, ill-will and pecuniary interest—act to impeach the complainant's testimony.[16]

■ Great latitude in cross-examining a complaining witness on his pending or contemplated civil action against a defendant may be appropriate even where the action relates to circumstances removed from the incident for which the defendant stands criminally charged. The "mere fact" or contemplation "of litigation upon a disconnected matter may not necessarily show bias, still it is useless to attempt to distinguish and refine for the purpose of .exclusion." 3A J. Wigmore, Evidence § 949 (Chadbourn rev. 1970) (footnote omitted).

■ We conclude, as a general proposition, that the possibility of a civil suit, of whatever kind, by a complaining witness against a criminal defendant is a relevant source of testimonial impeachment, since it at least raises the *possibility* of bias. *See White v. United States*, D.C.App., 297 A.2d 766, 768 (1972). *Cf. Smith v. United States*, D.C.App., 389 A.2d 1364 (1978) (cross-examination of complaining witness on her status as police informant in other cases not involving defendant irrelevant to issue of her possible bias toward defendant).

In the instant case, the trial court did prohibit defense counsel from inquiring, before the jury, as to complainant's contemplation of a civil suit against appellant involving the automobile accident. However, the trial court did *not* prohibit defense counsel from cross-examining complainant on the details of his accident with appellant, or on the scope of the injuries he sustained as a result of it. Since it was the accident itself which might have generated whatev-

er ill-will complainant might have felt towards appellant, since a substantial exploration of bias was pursued on cross-examination, and since the record reveals no clear indication that Ritter was seriously contemplating civil action, the court's limitation deprived the jury of very little in the way of impeachment value. *See Davenport v. District of Columbia*, D.C.Mun.App., 61 A.2d 486, 489 (1948). *See also Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Best v. United States, supra.*

■ Putting our conclusion another way, we find it error for the trial court to have acted to prevent the jury's hearing the inquiry, into complainant's future intentions as to civil litigation, but nevertheless discern no harmful impact from such error on appellant's defense. "If . . . the trial court has permitted *some* cross-examination so that the jury has sufficient information from which to infer bias (should it so choose), this court will evaluate error by application of the harmless constitutional error test of *Chapman v. California* [386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)]." *Springer v. United States, supra* at 856 (emphasis in original). Here, we find the trial court's error in restricting complainant's cross-examination harmless beyond a reasonable doubt.

*Affirmed.*

---

**16.** Arguably, bias may be more definitively shown by a complainant's lawsuit, pending at the time he testifies, than by his contemplation of one. A jury might well find a pending lawsuit to evidence a more intense degree of ill-will toward a defendant and a more immediate pecuniary advantage in his conviction than a contemplated action. The relevance of cross-examining the complaint on his future intentions, however, does not turn on what weight the jury might ultimately give them in considering that witness' credibility. Relevance is established whenever those intentions may show some *conceivable* interest by the complainant in the outcome of the criminal case which might cause him to slant his testimony against the defendant. *See generally* McCormick, *supra.* *See also Brooks v. State*, 259 Ind. 678, 291 N.E.2d 559, 560 (1973).