Ronald E. CREWS, Appellant,

v.

UNITED STATES, Appellee.

No. 84–1054.

District of Columbia Court of Appeals.

Argued Jan. 14, 1986.
Decided Aug. 26, 1986.

Nina Kraut, Washington, D.C., appointed by this court, for appellant.

T. Mark Flanagan, Jr., Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty.,

and Michael W. Farrell, Judith Hetherton, and Alan D. Strasser, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and BELSON and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

In May 1984, a jury convicted appellant Crews of the offenses of assault with a dangerous weapon and carrying a concealed weapon. D.C. Code §§ 22–502, –3204 (1981). His major contention on appeal is that the trial court erred in permitting two prior arrests of Crews to be used in cross-examination by the government of defense witnesses who had testified as to Crews' reputation for truth and veracity. He also asserts that the trial court abused its discretion in admitting certain portions of medical records and challenges the adequacy of the proof of the District of Columbia as the locale of the crime. Finding no error, we affirm.

I.

The facts need not long detain us. In summary, the government's evidence showed that in the course of an altercation between Crews and one Robinson in April 1983, Crews stabbed Robinson with a knife. Crews testified that he acted in self-defense. He also presented two character witnesses [1] to testify solely as to his reputation for "truth and veracity." [2]

Prior to the presentation of the defense case, a long colloquy took place about the use by the government in cross-examination of Crews' arrests and convictions.[3]

---

[1] One witness, an employee of a community center, had known appellant since 1978. The other witness was an assistant pastor at a church that ran an emergency assistance center. He had known Crews for about a year and a half. Crews was a volunteer helper at these centers and also a user of their facilities, and thus had become known to both witnesses.

[2] Although in fact, apparently because of definitional confusion, the witnesses also spoke of Crews as being "honest" and "trustworthy" and

"non-violent," both the government and appellant have argued this case on the assumption that only appellant's "truth and veracity" were involved in the questioning. We proceed on that basis.

[3] Crews' record included the following: a 1981 arrest for assault with a deadly weapon; a 1978 arrest for simple assault; a 1976 arrest for attempted robbery; a 1976 arrest and related conviction for a dangerous drug violation; a 1976 conviction for a narcotics violation; a 1975 ar-

After overnight consideration, the trial court ruled that the government could use any convictions that could be used to impeach Crews directly but that the use of arrests would be limited to those for "alleged offenses that rather directly involve truth or veracity and within a fairly recent period of time." The trial court specified as falling within this category only the 1976 arrest for attempted robbery and the 1975 arrest for first-degree burglary.

Crews testified in his own behalf, followed by the two character witnesses. The character witnesses testified that they were generally unaware of Crews' arrests or convictions.[4] The trial court gave a contemporaneous cautionary instruction to the jury:

> That cross-examination [concerning prior arrests and convictions] is admitted not to establish that any of those previous events took place but only to test the foundation and reliability of the character witness' testimony. And you may consider those questions and the answers only in evaluating the knowledge upon which this witness based his testimony. You must not consider those questions and answers as any evidence tending to prove that Mr. Crews committed any of those other crimes charged or that he is a person of bad character.

Cf. Criminal Jury Instructions for the District of Columbia, No. 2.43 (3d ed. 1978).

II.

*Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), has for almost forty years stood as the leading case sanctioning the use of arrests in cross-examination of defense character witnesses. In *Michelson,* the case hinged on whether the jury believed the defendant or a government witness. Defendant called five witnesses to testify as to his reputation for "honesty and truthfulness and for being a law-abiding citizen." 335 U.S. at 471, 69 S.Ct. at 216. In cross-examination of four of the witnesses, the prosecutor asked: "Did you ever hear that on October 11, 1920, the defendant ... was arrested for receiving stolen goods?" None of the witnesses had heard of this arrest. 335 U.S. at 472, 69 S.Ct. at 216.

The Supreme Court acknowledged the common-law tradition that disallows resort by the prosecutor to use of a defendant's evil character to establish a probability of guilt, but held that where a defendant seeks to prove his good name, a price he pays is to make himself vulnerable where the law otherwise shields him. True it is, said the Court, that arrests may not be used to impeach the credibility of a defendant or a witness, but an arrest without

---

rest and related conviction for a narcotics violation; a 1975 arrest for assault with a deadly weapon, first-degree burglary, and destruction of property and related convictions for unlawful entry and destruction of property; a 1974 arrest for unauthorized use of a vehicle; a 1973 arrest for assault with a deadly weapon; and a 1969 arrest for a Bail Reform Act violation.

**4.** One character witness testified that he had never heard of the arrests or convictions. The other testified that he had only heard "something about [prior arrests and convictions] since this case has come up." Where the defendant testifies and the character trait involved is truth and veracity, the critical period for reputation is up until time of trial. *Marcus v. United States,* 476 A.2d 1134, 1138 (D.C.1984); *United States v. Lewis,* 157 U.S.App.D.C. 43, 51 n. 44, 482 F.2d 632, 640 n. 44 (1973). Where the character witness at the time of trial does not know of

defendant's prior arrests, his qualifications to testify as to defendant's reputation are put into doubt. Where the character witness at the time of trial knows of the arrests, it is not his qualifications but rather the correctness of his testimony as to the defendant's reputation that is being attacked by use of the prior arrests. Even though in a derivative sense defendant's veracity as such is thus brought into issue, the use of arrests to attack the testimony as to defendant's *reputation* for veracity is analytically a distinct question. Were arrests not allowed to be used for the latter purpose, they would effectively be disallowed in all circumstances, since at the time of trial any character witness can be made aware of defendant's prior arrest record. In any event, we need not explore this issue further here; the questions as to prior arrests were clearly relevant as to the qualifications of the first character witness, to whom the more detailed questions were addressed.

more may nevertheless impair or cloud a defendant's reputation. Therefore, a "character witness may be cross-examined as to an arrest [of a defendant] whether or not it culminated in a conviction, according to the overwhelming weight of authority." 335 U.S. at 482, 69 S.Ct. at 221. (footnote omitted). Furthermore, an inquiry as to an arrest is permissible because the prosecution has the right to test the qualifications of a witness to bespeak the community opinion.

In *Michelson,* the arrest had occurred some 27 years before the trial and was markedly dissimilar to the bribery offense for which the defendant was tried. Nevertheless, the Supreme Court acknowledged the "wide discretion" of the trial court and affirmed the judgment. "[R]arely and only on clear showing of prejudicial abuse of discretion will Courts of Appeals disturb rulings of trial courts on this subject." 335 U.S. at 480, 69 S.Ct. at 221. The Court added, however, that the discretion to allow such an inquiry is accompanied by "heavy responsibility" on trial courts to protect the practice from misuse.

In *Michelson,* as here, conviction or acquittal depended on whether the jury believed the defendant. In *Michelson,* as here, the arrest occurred some time prior to the incident charged and for a dissimilar offense. In *Michelson,* as here, the trial judge was scrupulous to guard the practice from misuse. *See* discussion at note 3, *supra.*

Crews argues that the apparent broad holding of *Michelson* has been read and applied more narrowly in practice. Specifically, he argues that where character witnesses are presented to testify solely as to a defendant's truth and veracity, prior arrests may never be used in cross-examination.[5] Such a rule, he asserts, is derived from the holdings[6] in *United States v. Fox,* 154 U.S.App.D.C. 1, 473 F.2d 131 (1972), and *United States v. Lewis, supra,* 157 U.S. App. D.C. 43, 482 F.2d 632.[7]

We do not think that the trial court's ruling in this case transgressed the teaching of *Fox*[8] or *Lewis.* In any event, the issue as applied to the case at bar was settled in our jurisdiction by the holding in *Marcus v. United States,* 476 A.2d 1134 (D.C.1984). There, defendant proposed to

5. This was the position taken at trial and at oral argument before us. Crews' brief asserts that in any event, on the facts of this case, the probative value was so far outweighed by the prejudice to Crews that the trial court committed prejudicial error in permitting the use of the two arrests. Crews in particular points to the time that had elapsed between the time of the arrest and the date of trial, and the dubious relationship between the nature of the alleged crimes and the trait of truth and veracity. We do not think that the trial court abused its discretion in these respects.

6. Neither case is strictly binding upon us, although of course they are both entitled to great respect. *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971).

7. *Lewis,* in particular, has been so interpreted. *See* 2 Criminal Practice Institute Trial Manual 31.80 (1985 ed.).

8. *Fox* held that a proposed character witness for truth and veracity could not be asked about a prior rape arrest of defendant. The court reasoned that since the relationship between rape

and veracity was "tenuous at best," the probative value of the arrest was far outweighed by the prejudice it introduced. However, it was careful to point out that "cross-examination may test whether the character witness is *qualified* to serve his function of providing an adequate report of the community's sentiments" and that "for this purpose questions regarding a defendant's arrest may be proper." 154 U.S. App.D.C. at 6, 473 F.2d at 136 (emphasis in original). Although a number of factual differences exist between *Fox* and our case, perhaps the most significant difference is that in our courts, by statute, any felony conviction less than ten years old may be introduced as of right by the prosecution to impeach the credibility of a witness. D.C. Code § 14–305 (1981). Thus the legislative branch has made a determination that tends to rebuff the underlying premise of *Fox* that rape has only a tenuous relationship to a reputation for veracity. In the federal courts, by contrast, a prior felony conviction can be used for impeachment only if the court finds that the probative value outweighs the potential for prejudice, unless the crime involved dishonesty or false statement. FED.R.EVID. 609(a); *United States v. Jackson,* 201 U.S.App.D.C. 212, 627 F.2d 1198 (1980).

present two character witnesses. The issue was whether they could be asked about defendant's arrest that occurred two weeks after the charged offense. The trial court held that if the defendant testified, the testimony of the character witnesses would necessarily go to the defendant's reputation for truth and veracity [9] at the time of trial, and therefore the witnesses could be questioned about the subsequent arrest. We upheld the ruling as a proper exercise of discretion, citing approvingly in several places to *Lewis*.[10] *See also Morris v. United States,* 469 A.2d 432 (D.C.1983).

As *Lewis* itself recognizes, "in the final analysis the matter should be left to careful handling by the trial judge, subject to appellate correction only where mishandling is clear." 157 U.S.App.D.C. at 53, 482 F.2d at 642. For the reasons stated, we believe the trial court here acted with the scrupulous care mandated by *Michelson* [11] and committed no abuse of discretion in the manner in which it permitted use of questions concerning Crews' past arrests for attempted robbery and first-degree burglary.

### III.

Appellant also contends that the trial court erroneously admitted the complainant's hospital records under the business records exception to the hearsay rule. After a lengthy discussion on the admissibility of the records, the court ruled that everything in them was admissible under the business records exception, except for a portion including the term "assaulted," which he ordered excised. Appellant claims the records were inadmissible because a) the government did not lay an adequate foundation under the business records exception; b) the records contained inflammatory, subjective information that prejudiced appellant; and c) the records constituted prior consistent statements of the medical expert and thus were cumulative.

At trial appellant made objections only on the latter two grounds; we must, therefore, consider the first objection under the plain error standard. *See Watts v. United States,* 362 A.2d 706, 709 (D.C. 1976) (en banc). Super.Ct.Civ.R. 43–I (a), made applicable to criminal cases by Super. Ct.Cr.R. 57 (a), governs the admission of business records:

> Any writing or record ... made as a memorandum or record of any act ... or event, shall be admissible as evidence of such act ... or event, if made in regular course of any business, and if it was the regular course of such business to make

9. At times in the opinion, we used the phrase "truth and honesty," but it is clear that the word "honest" was meant to characterize a teller of truths.

10. *Lewis* stated that questioning as to a narcotics arrest of defendant could not be justified by introduction of evidence as to defendant's reputation for truth and veracity. The court reasoned that since the defendant's credibility could be impeached only by convictions and not arrests, therefore, "evidence of arrests, without more, may not be introduced for the purpose of testing the credibility of the defendant directly or indirectly through its character witnesses," quoting directly from *Fox.* It noted as its concern that any probative contribution the arrest might have made to credibility—either of the accused or the witness—was greatly outweighed by the prejudice it inflicted on the issue of guilt. It is not clear whether the ban in *Lewis* was intended to be absolute, as some have interpret-

ed it, *see* note 7, *supra,* or whether the court was speaking within the particular facts of that case. A weighing of prejudice and probative value need not automatically lead to a rejection of all types of arrests in all cases where only truth and veracity are involved. Our holding in *Marcus* indicates approval of the narrower reading of the *Lewis* opinion.

11. 335 U.S. at 480–81, 69 S.Ct. at 220–21. In *Morris v. United States, supra,* we specifically noted that "impeachment of character witnesses has long been recognized as presenting the danger of undue prejudice to criminal defendants even where, as here, an appropriate limiting instruction is given," 469 A.2d at 435, and set forth various ways in which the trial court can seek to minimize such prejudice. *See also Rogers v. United States,* 483 A.2d 277, 287–90 (D.C. 1984), *cert. denied,* 469 U.S. 1227, 105 S.Ct. 1223, 84 L.Ed.2d 363 (1985).

such memorandum or record at the time of such act ... or event....

As we stated in *Sullivan v. United States*, 404 A.2d 153 (D.C.1979):

> [I]t is obvious that medical entries as to complainant's condition—his appearance, physical signs such as pulse, respiration, etc., and the resulting diagnosis—constitute a record admissible under Rule 43–I(a). Such entries are routinely made in the "regular course" of admitting patients, and a hospital fits firmly within the rubric of "business, profession, occupation and calling of every kind," by which Rule 43–I(a) defines a business.

*Id.* at 158 (footnote omitted).

The extent of the foundation laid by the medical expert in the instant case was the following:

> Q: ... Now [Dr. Sadler], you just mentioned taking a history.
>
> Is that history then reflected in medical records which are kept about that particular patient?
>
> A: Yes.
>
> Q: And, sir, did you review the medical records of Mr. Robinson in preparation for your testimony here today?
>
> A: Yes.
>
> .    .    .    .    .
>
> Q: Let me show you what's been marked Government's Exhibit 1 for identification. Are those the medical records of Mr. Robinson that you looked at? (Handing)
>
> A: (Perusing) Yes. This is the medical record of Mr. James Robinson.

Although this testimony does not establish the foundation required by Super.Ct.Civ.R. 43–I (a),[12] without an objection at trial we will reverse only if the error is "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts, supra*, 362 A.2d at 709. The lack of foundation here is of no such magnitude. A timely objection would have

permitted the trial court to require that the government lay a proper foundation, and we see no reason why this could not have been done with testimony from Dr. Sadler.

■ Turning to appellant's other two claims, we proceed from a recognition of the trial court's "broad discretion to determine the substance, form, and quantum of evidence" presented to a jury. *Johnson v. United States*, 452 A.2d 959, 960 (D.C. 1982). We reject appellant's claim that the judge abused his discretion in not excising more of the records. Information from the victim as to his version of the cause of his injuries cannot be admitted under the business records exception, *Sullivan, supra*, 404 A.2d at 158, and this portion of the records was excised. We do not believe that allowing the jury to read such terms as "bluntly smitten" and "multiple stab wounds" so prejudiced appellant as to be an abuse of discretion.

Similarly, we see no merit in appellant's contention that the records were "mere repetition" of the doctor's testimony. The trial judge specifically addressed that issue and decided that the records included information about which the doctor had not already testified. The court also pointed out that defense counsel had had the records long enough to have reviewed them and used them for cross-examination. There was no abuse of discretion.

### IV.

■ Appellant's final contention is that the government's evidence was insufficient to establish that the crimes charged took place in the District of Columbia. We held in *Best v. United States*, 237 A.2d 825, 826 (D.C.1968), that venue may be proved by circumstances and inferences and the commonly accepted meaning of words as well as by precise descriptions. *See also White v. United States*, 222 A.2d 843, 845 (D.C. 1966). Appellant's brief itself enumerates many references in trial testimony to place

---

**12.** *Cf. Smith v. United States*, 337 A.2d 219, 222 (D.C.1975), where a doctor's testimony that certain medical records were "the standard protocol ... we have at the hospital," was sufficient to establish that they were ones routinely used by the hospital.

names in the District of Columbia, including: "524 –50th Place, N.E."; "50th and Benning Road, S.E."; "14 and R, N.W."; "1407 New Jersey Avenue"; "19 Eye Street, N.W. off of North Capitol"; and "D.C. General Hospital." Taken cumulatively, these and many other like references were sufficient to establish that the crimes occurred in the District of Columbia.[13]

*Affirmed.*

---

13. Needless to say, this is hardly the best way to establish venue as a matter of routine practice.