Maurice W. DEVORE, Appellant,

v.

UNITED STATES, Appellee.

No. 85–726.

District of Columbia Court of Appeals.

Argued Oct. 7, 1986.
Decided Sept. 11, 1987.

Calvin Steinmetz, with whom Anita Isicson, Washington, D.C., appointed by this court, was on the brief, for appellant.

Michael B. Hull, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, and N. Paul Patterson, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, STEADMAN, Associate Judge, and GALLAGHER, Senior Judge.

STEADMAN, Associate Judge:

In *McAdoo v. United States*, 515 A.2d 412 (D.C.1986), we held that a defendant's juvenile adjudications cannot be used

to impeach the defendant's character witnesses on cross-examination. Before us on this appeal is the question whether a character witness may be cross-examined about the wrongful acts of the defendant that underlie the juvenile adjudications. We hold that such acts may be used, subject to the heavy responsibility of the trial court to prevent any abuse.[1] We must, however, vacate appellant's unauthorized use of a motor vehicle conviction as he was convicted of both this crime and that of receiving stolen property in violation of the Double Jeopardy Clause of the Fifth Amendment.

## I.

Appellant was arrested after he was stopped for driving a stolen car with broken locks and a missing ignition[2] which he was operating without lights in the early morning hours. His defense at trial was that he gained access to the vehicle from an acquaintance, Michele Brown. She allegedly stated that it belonged to a friend who was working on the ignition. Ms. Brown allowed appellant to drive the car in her presence and then requested that appellant park the car near his house. Appellant testified at trial that he did park the car but returned and drove the car several times without obtaining Ms. Brown's permission. It was during the last of these trips that appellant was arrested.

Before trial, appellant stated that he intended to call a character witness to testify to his reputation for truth and veracity. At the time of trial in January 1985, appellant was twenty years old. He had juvenile adjudications for larceny and robbery in 1980, 1981 and 1982. The trial court ruled that the prosecutor would be permit-

ted to cross-examine the defense character witness about his knowledge of appellant's prior involvement in criminal wrongful acts while a juvenile as long as the prosecutor refrained from the use of the words "arrest" and "adjudication." The trial court stated:

> [I]t seems to me that if Mr. Devore had merely been arrested ... I would not permit those juvenile arrests to come in because I would have to conclude that because the juvenile process is confidential, ... it is not reasonable to expect [that] a character witness testifying ... would have heard about juvenile arrests.... Likewise, I think it would be reasonable to conclude that the character witness would not have heard about these matters being adjudicated. On the other hand, I think it reasonable to conclude that whether it's a juvenile matter or an adult matter, a character witness would have heard about prior conduct, prior bad conduct involving these traits.... It seems to me whether it is conduct as a juvenile or as an adult has nothing to do with it.

Based upon the court's ruling, appellant chose not to call this character witness.[3]

## II.

 Generally the prosecution may test a character witness' knowledge of the defendant's community reputation by asking whether the witness has heard of particular events, including prior convictions, arrests, and wrongful acts of the defendant. *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *Crews v. United States*, 514 A.2d 432 (D.C.

---

1. Appellant also claims that the trial court erred in permitting a witness (Michele Brown) to assert her Fifth Amendment privilege not to testify. The trial court conducted extensive questioning under both prongs of the test set forth in *Jaggers v. United States*, 482 A.2d 786 (D.C.1984). Under the second prong, *viz.*, an assessment of the realistic risk of prosecution, the trial court went so far as to request the presence of the prosecutor's supervisor to explain the government's policy.

 We also decline appellant's invitation to revisit the issue of a court's refusal to require a grant of immunity. Our courts have no such authori-

ty. *Reese v. United States*, 467 A.2d 152, 157 n. 8 (D.C.1983).

2. Appellant admitted he started the car with the screwdriver found in the vehicle.

3. The government urges us to base our decision on *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). We decline to do so, leaving for another day an examination of the applicability and scope of that opinion. We can decide the case on the merits without reference to *Luce*. *See Robinson v. United States*, 513 A.2d 218, 221 n. 7 (D.C.1986).

1986) (arrests); *Johnson v. United States*, 373 A.2d 596 (D.C.1977) (wrongful acts). Appellant contends, however, that *McAdoo v. United States, supra,* forbids the use of defendant's juvenile wrongful acts to impeach a character witness. While recognizing that the courts were divided on the issue, *McAdoo* announced a flat prohibition on the use of a defendant's juvenile *adjudications* to impeach the defendant's character witnesses. It was noted:

> [O]ur statutory policy of protecting the confidentiality of these records makes it likely that character witnesses, when asked whether they have heard members of the community speak about a defendant's juvenile adjudications, will answer in the negative. That answer may cause the jury to question the witness' reliability in reporting the defendant's reputation [citation omitted], even though the witness (as well as others in the community) may have had no real opportunity to hear about these adjudications....

Accordingly, cross-examination of a character witness about a defendant's juvenile record has no legitimate probative value because the witness likely will have had little, if any, opportunity to hear people talk about it; and yet the suggestion of such a record is highly prejudicial not only because it discloses confidential records but also because it plants an impression which the character witness is not in a position to counteract.

515 A.2d at 418–19. Thus, the result in *McAdoo* is primarily based on the recognition that as a consequence of the statute ensuring confidentiality of juvenile adjudications, *see* D.C.Code § 16–2331 (1981), the traditional assumption made in character witness impeachment—that the community is aware of a defendant's prior convictions—is made more likely false than true.[4] While it may always be unfair to ask a character witness if he knows of the defendant's secret juvenile adjudications, on the contrary it seems reasonably likely, as the trial judge noted, that community members in general will have heard of a juvenile's commission of wrongful acts, independently of any arrest or adjudication.[5] Therefore, we hold that there should be no per se rule excluding all use of juvenile wrongful acts to impeach a defendant's character witnesses.[6]

It may be argued that permitting use of the juvenile wrongful acts underlying juvenile adjudications lets in the back door what *McAdoo* forbids through the front, and thereby defeats the purpose of confidentiality in the juvenile justice system. Such an argument misconceives the rationale underlying *McAdoo* discussed above, and furthermore overlooks the fact that such confidentiality is not absolute. *See* D.C.Code 16–2331(b) (1981) (listing circumstances where juvenile records may be inspected); *Davis v. Alaska,* 415 U.S. 308, 320, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347 (1974) (interest in protecting confidentiality of juvenile record must yield to need for effective bias cross-examination); *cf.* FED. R.EVID. 609(d) (juvenile adjudications of a witness other than the accused may be used in a criminal case to attack the credibility of a witness if the court is satisfied that it is necessary for a fair determination of the issue of guilt or innocence). Yet more telling, this argument ignores the

---

4. While the adjudication itself is secret, the fact that a juvenile has been to court or was sent to a juvenile facility may be known in the community. However, rather than create confusion and delay the trial by requiring a hearing on the issue of actual community knowledge, *McAdoo* used the expectation of confidentiality created by the statute to justify a complete prohibition on inquiry into juvenile adjudications.

5. The government must, of course, meet its threshold burden to establish a factual basis that the acts in fact occurred. *See Johnson v. United States, supra.* On this issue, the juvenile adjudications should suffice.

6. We find scant authority in other jurisdictions on the precise point. In accord with the result of our holding is *Oliver v. State,* 440 So.2d 1180 (Ala.Crim.App.1983), construing *Green v. State,* 352 So.2d 1149 (Ala.Crim.App.1977). However, those cases involved a statutory prohibition against use of juvenile dispositions as evidence in other court proceedings, without involving confidentiality as such. Most jurisdictions that have considered the general area have focused on questioning directly relating to juvenile proceedings, as in *McAdoo.*

fundamental nature of cross-examination of a character witness presented by a defendant who has elected to initiate a character inquiry. This was the teaching of *Michelson v. United States, supra,* which we recently summarized in *Crews v. United States, supra,* 514 A.2d at 434–35:

> The Supreme Court acknowledged the commonlaw tradition that disallows resort by the prosecutor to use of a defendant's evil character to establish a probability of guilt, but held that where a defendant seeks to prove his good name, a price he pays is to make himself vulnerable where the law otherwise shields him. True it is, said the Court, that arrests may not be used to impeach the credibility of a defendant or witness, but an arrest without more may nevertheless impair or cloud a defendant's reputation. Therefore, a "character witness may be cross-examined as to an arrest [of a defendant] whether or not it culminated in a conviction, according to the overwhelming weight of authority." [Citation and footnote omitted.] Furthermore, an inquiry as to an arrest is permissible because the prosecution has the right to test the qualifications of a witness to bespeak the community opinion.

So here, if by introducing a character witness a defendant elects to prove his good name, he draws aside by his own hand whatever veil the law may otherwise place over his youthful conduct[7] so that his proof may be subjected to "tests of credibility designed to prevent him from profiting by a mere parade of partisans." *Michelson, supra,* 335 U.S. at 479, 69 S.Ct. at 220; *cf. United States v. Canniff,* 521 F.2d 565, 570 (2d Cir.1975), *cert. denied,* 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976) (unfair to permit defendant, adjudicated a youthful offender, "to create the erroneous opinion ... that he had never committed any offense at all"); *Stepheny v. State,* 570 S.W.2d 356 (Tenn.Crim.App. 1978) (not in harmony with truth-finding function of a trial to allow defendant, charged with juvenile offenses, to present through character witnesses "an unchallenged cloak of respectability and standing in the community when in fact that was not true").

■ However, although we do not find that a blanket prohibition is mandated, the decision to permit inquiry into a defendant's juvenile conduct still requires the trial court to carefully weigh the probative value and prejudicial effect of such evidence. As stated in *Michelson, supra,* "wide discretion is accompanied by heavy responsibility on trial courts to protect this practice from any misuse." 335 U.S. at 480, 96 S.Ct. at 220–21. If the trial courts act with scrupulous care in the exercise of their discretion, we will reverse only where mishandling is clear. *Crews, supra,* 514 A.2d at 435. We find no abuse of discretion in the trial court's ruling here.[8]

### III.

■ We now turn to appellant's double jeopardy claim. In *Worthy v. United States,* 509 A.2d 1157 (D.C.1986), we held, under similar facts, that receiving stolen property and unauthorized use of a motor vehicle merge for the purposes of double jeopardy when they are part of a single transaction. Therefore, as the government concedes, appellant is entitled to have the lesser charge, the unauthorized use conviction, vacated. Appellant was sentenced to an indeterminate term under the Federal Youth Corrections Act ("FYCA"), 18 U.S.C. § 5010(b). Under the FYCA, sentencing is designed to "fit the person not the crime for which he was convicted." *Dorszynski*

---

**7.** We recognize the importance of the general policy mandating confidentiality in court matters involving juveniles as noted in *McAdoo.*

**8.** The court conducted a hearing *in limine* on this issue. The wrongful acts of appellant were established by his juvenile adjudications. The trial took place in 1985 and the acts which underlay appellant's juvenile convictions took place within the previous five years and within this jurisdiction. Appellant's character witness would have testified that he had known appellant for the past ten years from his association with a local church; thus he was in a position to hear of the prior conduct of appellant. *Cf. Awkard v. United States,* 122 U.S.App.D.C. 165, 352 F.2d 641 (1965). Appellant makes no assertion that any special prejudicial factors exist in this case.

*v. United States*, 418 U.S. 424, 434, 94 S.Ct. 3042, 3048, 41 L.Ed.2d 855 (1974); *see also Tuten v. United States*, 440 A.2d 1008, 1012 (D.C.1982). Therefore, we need not remand for resentencing. The judgment of conviction for unauthorized use of a motor vehicle is vacated. The judgment of conviction for receiving stolen property is affirmed.

*So ordered.*

PRYOR, Chief Judge, concurring:

It may be that the holding in the present case, when compared with our decision in *McAdoo v. United States*, 515 A.2d 412 (D.C.1986), will cause some confusion. If the alternative is to allow no cross-examination of the character witness at all, then I reluctantly opt to permit the trial court, in the exercise of discretion, to authorize limited inquiry consistent with the majority opinion.