Michael W. ROGERS, Appellant,

v.

UNITED STATES, Appellee.

No. 85–1421.

District of Columbia Court of Appeals.

Argued En Banc Sept. 14, 1988.
Decided Nov. 17, 1989.[†]

† After oral argument, the parties and *amici curiae* submitted briefs on the invitation of court, the last of which was filed on December 1, 1988.

Peter N. Mann, Washington, D.C., appointed by the court, for appellant.

Helen M. Bollwerk, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and Thomas E. Zeno and Elizabeth Trosman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

James Klein, David Reiser, and Lisa Greenman, Washington, D.C., were on the brief for amicus curiae Public Defender Service.

John M. Copacino, Washington, D.C., was on the brief for amicus curiae Criminal Law Section of the District of Columbia Bar.

Before ROGERS, Chief Judge,* and NEWMAN, FERREN, BELSON, TERRY, STEADMAN, and SCHWELB, Associate Judges, and PRYOR, Senior Judge.** and MACK, Associate Judge, Retired.***

* Judge Rogers was an Associate Judge of this court at the time of argument. Her status changed to Chief Judge on November 1,. 1988.

** Judge Pryor was Chief Judge of this court at the time of argument. He was commissioned as a Senior Judge on November 2, 1988.

*** Judge Mack was an Associate Judge of the court at the time of argument. She became an Associate Judge, Retired, on October 1, 1989.

## ON REHEARING EN BANC

BELSON, Associate Judge:

Michael Rogers was convicted of distribution of phencyclidine (PCP) and cannabis (marijuana). D.C.Code § 33–541(a)(1) (1988 Repl.).[1] He appealed his convictions, challenging the exclusion of "negative evidence" of a defendant's good reputation and the cross-examination of a defense character witness as to defendant's prior arrests that occurred while he was a juvenile. The majority of a division of this court rejected both challenges and voted to affirm. *Rogers v. United States*, 534 A.2d 928 (D.C.1987), *vacated and reh'g en banc granted, id.* at 936 (1988). Having granted rehearing *en banc*, we consider only the second of these issues, whether the government may use a defendant's juvenile arrests to cross-examine a witness to defendant's good character. We hold that the trial court, in the exercise of its sound discretion, may permit such cross-examination, and we also take this occasion to expand the scope of permissible character testimony beyond the currently permitted reputation testimony to include the witness' opinion about the relevant character trait.

### I.

After testifying in his own behalf at the trial on the distribution charges, appellant presented two witnesses to attest to his good character for truth and veracity, the Reverend David Durham and Ms. Barbara Gibson. The government had requested permission to use three juvenile arrests on charges involving moral turpitude to impeach the reputation witnesses. After what appellant terms "extensive discussion between court and counsel" out of the jury's hearing, the trial court at first declined on the basis of an assessment of prejudicial effect versus probative value, but later reassessed the matter and ruled that the government could question the character witnesses about appellant's juvenile arrests. Reverend Durham testified that he had never heard anyone discuss appellant's reputation for truth and veracity. The trial court did not permit him to testify concerning appellant's character.[2] Ms. Gibson, who had known appellant for thirteen years through the Mt. Sinai Baptist Church Youth Council, testified that appellant was well mannered in church and that he had a reputation for telling the truth. On cross-examination, she said that she had never heard that appellant was arrested for petty larceny in 1977, for burglary and grand larceny in 1978, or for robbery in 1981.[3]

We hold that this cross-examination of Ms. Gibson was permissible. As this case has caused us to reassess issues relating to the testimony of character witnesses, it presents an appropriate occasion for bringing the law in the District of Columbia into conformity with that of the large and growing number of jurisdictions that have ruled that the range of evidence admissible to prove a party's good character shall include the opinion of a lay witness based on the witness' knowledge of the party.[4] It will remain permissible to adduce a witness' knowledge of the party's reputation in a community of which defendant is a member. Whenever character evidence is received pursuant to our holdings here, the trial court will remain responsible to exercise its broad discretion to screen proposed cross-examination for rele-

---

1. We adopt the statement of the facts as set forth in the opinion of the division majority at 534 A.2d 928, 929–30 (D.C.1987).

2. The division concluded that the trial court had committed harmless error when it declined to admit Reverend Durham's "negative evidence of reputation," *i.e.,* testimony by one who had been in a position to hear negative reports about a defendant's character if such reports had been circulating, but had heard none. This *en banc* ruling does not alter that determination.

3. The division opinion mistakenly stated that two of those arrests had been dismissed. 534 A.2d at 932. Only one was dismissed. A second resulted in a consent decree, and the robbery charge resulted in a plea of guilty to the lesser included offense of simple assault.

4. We choose to reach this issue even though its resolution is not critical to our holding. *See Winters v. United States*, 317 A.2d 530, 532 (D.C. 1974) (en banc). As in *Winters*, our ruling here is prospective. *See id.* at 533.

vance, prejudice that outweighs probative value, potential to cause excessive delay, or possible jury confusion. *See Michelson v. United States*, 335 U.S. 469, 480, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948) (trial court has "heavy responsibility" to exercise discretion); *see also Devore v. United States*, 530 A.2d 1173, 1174, 1176 (D.C.1987).

## II.

The evolution of proof of character at trial has been marked by vacillation as to what methods of proof are acceptable. Conceptually, character can be proved by reference to specific acts, reputation, or opinion. While testimony as to reputation has long been allowed to prove character, it is only relatively recently that courts in this country generally have made reputation the exclusive means of proof. At common law, "the original and .unquestioned practice called for and allowed the witness' *own belief,* founded merely on personal intimacy, as to the trait of character in question, and did not insist on or necessarily ask for the community's reputation." 7 J. WIGMORE, EVIDENCE § 1981, at 206 (Chadbourn ed.1978) (emphasis in original). Wigmore decries reputation evidence as "the secondhand, irresponsible product of multiplied guesses and gossip." *Id.* § 1986, at 244. Several commentators have acknowledged that reputation evidence is little more than "opinion in disguise," *see, e.g.,* 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE § 405[03] (1986), rendering meaningless the distinction between reputation and opinion testimony and .mooting the debate over which is preferable. Indeed, the Advisory Committee on the Federal Rules of Evidence felt that "the persistence of reputation evidence is due to its largely being opinion in disguise." Fed.R.Evid. 405 advisory committee's note. *See also Government of Virgin Islands v. Petersen,* 553 F.2d 324, 328 (3d Cir.1977).

Commentators often refer to reputation testimony as the "traditional" method of proving character. In fact, a review of historical developments confirms that in ruling that opinion testimony shall also be admissible, we have now come full circle. As the Advisory Committee on the Federal Rules noted, "[i]n recognizing opinion as a means of proving character, the rule departs from usual contemporary practice in favor of that of an earlier day." 22 C. WRIGHT & K. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5262, at 570 n. 42 (1978); McCORMICK ON EVIDENCE § 186, at 551 n. 10 (Cleary ed.1984). The early English common law favored the use of opinion to prove character. Courts allowed the use of reputation testimony as well, but "to speak from reputation alone was regarded in the 1700's as improper." WIGMORE, *supra,* § 1981, at 208–09. Nineteenth century evidentiary codes did not explicitly prefer reputation testimony as the means of proving character, but "there is reason to think that the drafters thought of 'character' as synonymous with reputation." 22 C. WRIGHT & K. GRAHAM, *supra,* § 5261, at 561 (1978). A later change to exclusive reliance on reputation, *see* WIGMORE, *supra,* § 1610, found such favor in this country that many have been led to consider proof of character by reputation the traditional approach. *See, e.g.,* C. WAGNER, FEDERAL TRIAL EVIDENCE 126 (1984). To the contrary, the eclipse of opinion testimony by reputation was the result of a "historical accident," according to Wigmore, growing out of the misinterpretation by a few treatise authors of a phrase used in an early nineteenth century opinion, *Jones' Trial,* 31 How.St.Tr. 251, 310 (1809), *cited in* WIGMORE, *supra,* § 1981, at 210. *See also* McCORMICK, *supra,* § 44, at 100. Wigmore opines that "[s]o far as practical policy and utility are concerned, there ought to be no hesitation between reputation and personal knowledge and belief." WIGMORE, *supra,* § 1986, at 243. Furthermore, in practice the distinction between the two is often "little more than a fiction." 22 WRIGHT & GRAHAM, *supra,* § 5262, at 570.

Nonetheless, American courts have long applied the formulation set forth by the Supreme Court in *Michelson v. United States, supra:*

> The [character] witness may not testify ... that his own acquaintance, observation, and knowledge of defendant leads to his own independent opinion that de-

fendant possesses a good general or specific character.... The witness is, however, allowed to summarize what he has heard in the community, although much of it may have been said by persons less qualified to judge than himself. The evidence which the law permits is not as to the personality of defendant but only as to the shadow his daily life has cast in his neighborhood.

335 U.S. at 477, 69 S.Ct. at 219.

■ In contrast to the "American tradition" of using reputation evidence to prove good character, the Federal Rules of Evidence, along with the Model Rules of Evidence and the Revised Uniform Rules of Evidence, allow not only reputation testimony but opinion testimony as well. Fed. R.Evid. 405(a); A.L.I. Model Code Evid. 306(2) (1942); Unif.R.Evid. 405(a); Uniform Laws Annotated (1986). The notes of the Advisory Committee on the Federal Rules reflect a deliberate rejection of the largely artificial distinction between reputation and opinion evidence.

The expansion of methods for proving character to include opinion testimony was one of the few departures of the Federal Rules of Evidence from the common law then in effect, see 22 WRIGHT & GRAHAM, supra, § 5261, at 554, and it generated considerable controversy.[5] The rule that emerged after much debate provides in part:

> In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

Fed.R.Evid. 405(a). While this approach is consistent with the longstanding practice of permitting cross-examination concerning relevant specific acts, it does not alter the prohibition against adducing, on direct examination, testimony about specific acts as a means of proving character when character is not otherwise "in issue." Fed.R. Evid. 405(b); Unif.R.Evid. 405(b) (1976). It remains true that a criminal defendant who asserts good character traits to suggest that he or she is unlikely to have engaged in the conduct charged "draws aside by his own hand whatever veil the law may otherwise place." *Devore, supra,* 530 A.2d at 1176.

■ This jurisdiction had not allowed testimony about specific acts as affirmative proof of character, *see, e.g., Hedgeman v. United States,* 352 A.2d 926 (D.C.1976), nor does this ruling permit it henceforth. A defendant's specific acts, however, remain a proper subject for the cross-examination of character witnesses for purposes of testing the foundation of the testimony or the credibility of the witness. *E.g., United States v. Payne,* 635 F.2d 643, 646–47 (7th Cir.1980), *cert. denied,* 451 U.S. 972, 101 S.Ct. 2050, 68 L.Ed.2d 351 (1981); *United States v. Edwards,* 549 F.2d 362, 366–67 (5th Cir.), *cert. denied,* 434 U.S. 828, 98 S.Ct. 107, 54 L.Ed.2d 87 (1977). Until now, the rule has been that the questions must explore what the witness has heard, but not what he or she *knows* about the defendant's specific acts. It is doubtful that the preference for the first of these two ways of framing the question arose out of its superiority as a means of informing the jury about the defendant's character. *See, e.g.,* WEINSTEIN, EVIDENCE 405–12 (1988); McCORMICK, *supra,* § 191, at 569. Under the federal rules, the form of the question is not limited to what the witness has heard, D.C. Bar, *Rules of Evidence Applied in Superior Court* 405– 2–3 (1984), nor will it be in this jurisdiction as our trial courts will henceforth receive opinion as well as reputation evidence from character witnesses.

Before the adoption of the Federal Rules of Evidence in 1974, almost every jurisdiction in the United States limited the means

---

5. The House Judiciary Committee, "fearing that 'wholesale allowance of opinion testimony might tend to turn a trial into a swearing contest between conflicting character witnesses,'" deleted from its proposed draft the language that departed from the then current common law practice of allowing only reputation testimony to prove character. H.R.Rep. No. 93–650, 93d Cong., 1st Sess. 7 (1973). The language was reinstated in floor debate. 120 Cong.Rec. (1974), *cited in* McCORMICK, *supra,* § 187, at 551 n. 10.

of proving character to reputation evidence. WIGMORE, *supra*, § 1985. Currently, thirty-one states have adopted codes of evidence based on the Federal Rules. G. JOSEPH & S. SALTZBURG, EVIDENCE IN AMERICA, THE FEDERAL RULES IN THE STATES xxiii (1987). Of these, twenty-five states allow proof of character by opinion testimony. It appears that only five of these, Delaware, Florida, Michigan, Vermont and Washington, follow the approach of proving character by reputation only.

Despite the adherence of many American jurisdictions to the neo-traditional reputation approach, exclusive reliance on reputation evidence has been criticized as an anachronism given the increasingly anonymous urban community. "Reputation in modern, impersonal urban centers is often evanescent, fragile or actually non-existent." McCORMICK, *supra*, § 44, at 101. Weinstein finds "a certain quaintness and flavor of earlier slow moving small town" in the exclusive use of reputation testimony. WEINSTEIN, *supra*, § 405[2]. McCormick notes that the fact that a similar critique has now attained antique status is a striking example of the tenacity of even out-moded legal concepts. In 1921, Cardozo commented that faith in the collective judgment of the community over the opinion of one witness

> is a survival of more simple times. It was justified in days when men lived in small communities. Perhaps it has some justification even now in rural districts. In the life of great cities, it has made evidence of character a farce.

B. CARDOZO, THE NATURE OF THE JUDICIAL PROCESS 157 (1921), *quoted in* 22 WRIGHT & GRAHAM, *supra*, § 5262, at 568–69.

■ At common law, the community in which a defendant's reputation was formed consisted of those among whom he or she lived. The federal rule, insofar as it permits reputation testimony, has been interpreted by a few courts, at least, as perpetuating this limited notion of community, 22 WRIGHT & GRAHAM, *supra*, § 5264, at 577 &

n. 24, but many courts have expanded the concept of "community" to embrace the school or workplace of a defendant who, along with many of the rest of us, may be a stranger to those among whom he dwells. McCORMICK, *supra*, § 191, at 568 n. 21 and cases cited therein. We agree with this concept of community. The availability of opinion testimony, together with our recognition of the expanded meaning of the word "community," should remedy the dissonance between the limitation to use of reputation testimony and the evolution of the community in modern urban life.

■ It is consistent with the rationale of reputation testimony to permit a witness to be cross-examined concerning vague and even untrue rumors about a defendant, provided they were actually in circulation in the relevant community. In practice, however, courts have followed the procedure of requiring the questioner to establish that the underlying event actually occurred in order to "hold the inquiry within decent bounds." *Michelson, supra,* 335 U.S. at 481 n. 18, 69 S.Ct. at 221 n. 18; *see also United States v. Lewis,* 157 U.S.App. D.C. 43, 50, 482 F.2d 632, 639 (1973). Similarly with opinion testimony, it will be incumbent upon the trial court to assure itself that any cross-examination about what the witness has or has not considered in reaching an opinion be based upon actual events.

An advantage to the use of opinion testimony results from the fact that the proper scope of reputation evidence is not always clear to witnesses or juries, and many practitioners and judges have concluded that often character witnesses testify as to their opinion of a party no matter how the questions are framed. "The average witness is unable to understand the admonition not to give his opinion, but that of others. He came to court to give his opinion, and despite some wrangling among attorneys and judges, this is usually what he manages to do." 2 WEINSTEIN, *supra*, § 405[02], at 405–21.[6] Proof of character by what is

---

6. The transcript of the bench conference concerning the proposed testimony of Ms. Gibson

in the instant case illustrates this phenomenon. Counsel for appellant asked the witness:

avowedly opinion testimony therefore conforms more with the reality of what the jurors are actually hearing. In addition, a limitation to reputation testimony, if actually enforced, may deprive the jury of the most probative evidence of character. Insistence on reputation as distinguished from opinion evidence may prevent a witness who knows a party intimately from giving his or her own opinion, while relaying hearsay from declarants who are less well acquainted with the defendant.

In light of the considerations we have discussed, we will henceforth apply the principles embodied in Federal Rule 405(a) and will permit lay character witnesses to testify as to their opinion of a party as well as their knowledge of his or her reputation.[7] As in the past, we will not allow witnesses to give direct testimony about specific acts as character evidence.

### III.

■ We next address the specific issue presented in this case. Here appellant challenges the trial court's ruling permitting the government to cross-examine a reputation character witness concerning her knowledge of three arrests of appellant as a juvenile. We have already observed that the practice has been to permit cross-examination of a character witness by reference to specific acts. In this regard, we have approved in the past cross-examination of witnesses to reputation for good

character concerning a defendant's past arrests, when the trial court allows such examination in the careful exercise of its discretion. *Crews v. United States,* 514 A.2d 432 (D.C.1986).[8] Appellant has addressed the use of juvenile arrests in the context of reputation evidence of character, as did the division that first heard this appeal. We will first consider the permissibility of arrest cross-examination in that context, and then discuss briefly the use that henceforth can be made of arrests to cross-examine opinion character witnesses.

Appellant argues that juvenile arrests are not a proper subject for cross-examination because of the general policy in favor of confidentiality of juvenile records. He contends that questions about juvenile arrests intrude into an area attended by confidentiality and that, because of that confidentiality, reputation witnesses are unlikely to have heard about the arrest. Finally, appellant argues that questions about a defendant's juvenile arrests should not be used for cross-examination as they are more prejudicial than probative. We disagree.

Appellant's contention that "public knowledge of arrests is as limited as public knowledge of juvenile adjudications" highlights the major flaw in appellant's argument. He disregards entirely the role of informal transmission of information among groups of persons who live, work, or go to school together. While the official records of a juvenile's involvement with the

---

Q. From all the things that you've heard spoken about the defendant, things that you've been in a position to hear about the defendant, what would you conclude about his reputation for truth and varacity?
A. That he's, that very good—
THE COURT: No, what's his reputation? Are you aware of his reputation?
THE WITNESS: Yes.
THE COURT: What's his reputation for telling the truth?
THE WITNESS: I can say he definitely will tell the truth.
THE COURT: No ma'am. That is not the question asked. Does he have a reputation in the community for truth and veracity?
THE WITNESS: Yes, he does.
THE COURT: And you believe his reputation in the community is one for telling the truth?

THE WITNESS: Yes.

7. We reaffirm our holding in *Cooper v. United States,* 353 A.2d 696 (D.C.1976), in which we held, contrary to Fed.R.Evid. 608(a), that a defendant may adduce evidence of his good character for truth and veracity regardless of whether it has been attacked by the prosecution. *Id.* at 703. We further note that our ruling affects only lay, as opposed to expert, testimony.

8. In the future, the form of permissible questions will include "Do you know ...?" as well as the old standby "Have you heard ...?" Normally, the cross-examiner should be required to conform questions put to the witness to the type of character evidence, reputation or opinion, adduced on direct examination.

criminal justice system are confidential,[9] there is no means of "sealing" information about a person's actions to prevent informal transmission by those who know about such acts. We recognize that a division of this court has held that it is improper to cross-examine a reputation witness about the fact that a defendant had been *adjudicated* guilty of an offense as a juvenile, *McAdoo v. United States*, 515 A.2d 412 (D.C.1986), and we do not overrule that holding. In another case, we have noted the distinction between a wrongful action committed as a juvenile and the official process that culminates in adjudication. The cloak of confidentiality does not extend to all of one's activities prior to majority. In *Devore, supra,* we declined to rule in favor of a blanket prohibition on questions about a defendant's juvenile conduct but stressed the importance of weighing the prejudicial effect of such questions against their probative value. *See also Morris v. United States,* 469 A.2d 432 (D.C.1983). The trial court, we stress, has a "heavy responsibility" to balance these factors, *Michelson, supra,* 335 U.S. at 480, 69 S.Ct. at 220, but the weighing need not be explicit. *Devore, supra,* 530 A.2d at 1176.

Appellant argues that *McAdoo* and *Devore,* along with the division opinion in the instant appeal, would not together constitute a coherent body of law, and that consistent with *McAdoo,* cross-examination of a reputation character witness about juvenile arrests should be strictly off limits.[10] This argument presupposes that by virtue of the confidential nature of juvenile records, members of the community do not have access to the information they contain, including reports of arrests. This argument supports rather than undermines the distinction between *McAdoo* and the instant case. *McAdoo* forbids questioning about adjudications, determinations reached in closed courtrooms about which community members in many instances could not learn without access to confidential files. The division majority in the instant case voted to uphold the court's exercise of discretion in permitting questioning about arrests, events which frequently occur in the community as a result of actions outside the confidential, official realm into which they may lead. This court has previously acknowledged the reality of informal transmission of information about official events that may be confidential. "While the adjudication itself is secret, the fact that a juvenile has been to court or was sentenced to a juvenile facility may be known in the community." *Devore, supra,* 530 A.2d at 1175 n. 4. Such community knowledge is even more likely in the case of an arrest, which may take place in public and may quickly become known and discussed by persons who know the person arrested.

■ Because a character witness cannot reasonably be expected to know about a truly confidential episode in the juvenile justice process, and because of the general policy in favor of confidential treatment of juvenile records, it is prudent for the trial court to hold a hearing outside the presence of the jury before a character witness is called in order to give the defendant the opportunity to show that the circumstances surrounding the juvenile arrest in question might preclude community knowledge or

9. D.C.Code § 16–2331 (1981) provides that juvenile case records are generally held confidential. Under § 16–2335 a juvenile can request that the records be sealed. Appellant in this case never requested that his juvenile record be sealed.

10. Like appellant, the dissenters would allow criminal defendants to offer evidence of good character based in large part (especially in cases of young adult defendants) on their lives as juveniles, but would not allow any cross-examination based upon their misdeeds as juveniles. This bar would be based upon the policy of confidentiality that was "designed to assure to a category of persons that matters arising out of their actions while under a certain age would not adversely affect them in the future." (Opinion of Rogers, C.J. concurring in part and dissenting in part, at 80.) But the logical corollary of the dissenters' approach is to bar altogether character testimony based on one's life as a juvenile. The dissenters' approach, instead, would allow a young adult to parade his juvenile life before the jury to the extent that it helps him, but then to retreat behind juvenile confidentiality when the government tries to cross-examine on the basis of aspects of his juvenile life that may reflect discredit upon him.

discussion about the arrest. There is no presumption to that effect, but if the court's inquiry should disclose that the witness' information is based substantially on juvenile records or proceedings as distinguished from events that defendant's acquaintances and other members of the community became aware of by other means, the policy expressed in *McAdoo* would come into play. Despite the valid interest in avoiding unduly time-consuming procedures within trials, this inquiry is not burdensome for trial courts, as they customarily conduct a bench conference so that defense counsel can learn what kind of cross-examination the prosecution has in store for character witnesses and then decide whether to call the witness.

Bench conferences conducted before the calling of a character witness can serve other useful purposes. The court may also rule that some subjects are off limits for cross-examination because the potential prejudicial effect of those questions would outweigh their probative value. In the instant case, as appellant acknowledges, the trial court decided to permit the use of juvenile arrests in cross-examination of a reputation witness only "after extensive discussion between the court and counsel," which informed the balancing process.

In addition to conducting a bench conference, the trial court in the instant case *sua sponte* instructed the jury immediately following the cross-examination of Ms. Gibson to limit its consideration to its proper use in establishing the witness' credibility and qualifications to testify as to the defendant's reputation.[11] *See, e.g., Crews v. United States,* 514 A.2d 432, 434 (D.C. 1986); *Awkard v. United States,* 122 U.S. App.D.C. 165, 167, 352 F.2d 641, 643 (1965).

This was the appropriate procedure. *See also* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.43 (3d ed.1978); Saltzburg & Redden, FEDERAL RULES OF EVIDENCE MANUAL 160 (3d ed.1982).

We conclude that in the case before us the appellant has failed to demonstrate an abuse of discretion by the trial court in allowing cross-examination with juvenile arrests. The trial court held a bench conference outside the presence of the jury, and weighed the prejudicial effect of such cross-examination against its probative value. The defense had every opportunity to present the court with facts and arguments in opposition to such cross-examination, including any indications that the juvenile arrests were not publicly known, a logically relevant factor as our opinion in *McAdoo* pointed out.

▪ We turn next to the issue of how the trial court should deal with efforts to impeach opinion character witnesses with a defendant's juvenile arrests. The analysis is different from the analysis regarding reputation evidence;[12] to explain why, we revisit briefly the arguments for denying cross-examination of a reputation character witness with juvenile adjudications.

In *McAdoo* this court gave two reasons for holding unduly prejudicial the cross-examination of reputation character witnesses with defendant's juvenile adjudications. One was that it is likely that reputation witnesses, when asked whether they had heard members of the community discuss a truly confidential juvenile adjudication, would have to answer in the negative; the second was the policy of confidentiality itself. *McAdoo, supra,* 515 A.2d at 419. We point out that with respect to cross-examining opinion character witnesses about

---

11. Because the trial court in this case gave the limiting instruction immediately, we do not address the issue of whether the trial court has a duty *sua sponte* to instruct the jury contemporaneously whenever there is testimony about specific acts that might place the defendant in a negative light. We recently held that it does not, *Maura v. United States,* 555 A.2d 1015 (D.C. 1989), but we note that it is a prudent course of action on the part of the trial court and one to be encouraged.

12. *See, e.g., United States v. Curtis,* 644 F.2d 263 (3d Cir.1981), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982), *cited in* WEINSTEIN & BERGER, *supra,* 405–15:

[A]n opinion witness can be cross-examined only on matters bearing on his own opinion, while a reputation witness can only be examined on matters reasonably proximate to the time of the alleged offense and likely to have been known to the relevant community at that time.

such juvenile matters, only the second of those two reasons applies.

Regarding reputation testimony, a cross-examiner is entitled to attempt to cast doubt upon the witness' foundation of knowledge for testifying by showing that the witness has not heard something that one familiar with defendant's reputation ordinarily would have heard. With respect to juvenile proceedings that in fact are confidential, this method of reputation cross-examination is logically not available; in *McAdoo* we effectively presumed that juvenile *adjudications* were not well enough known in the community to justify cross-examination of a reputation witness.

The situation is different regarding opinion character testimony. The issue is not whether the witness has heard what is available to be heard about defendant, but whether the witness' opinion has taken into account a fact actually present in appellant's background, *e.g.*, a previous arrest or bad act. If the witness has not done so, the worth of the witness' opinion is called into question.

We decide here that the second *McAdoo* ground, confidentiality of juvenile proceedings, is sufficient reason to preclude cross-examination of an opinion witness with a juvenile *arrest* of defendant where the facts demonstrate that the juvenile arrest was substantially nonpublic or confidential, and the witness could not reasonably be expected to have learned of its occurrence by means other than confidential records.

■ The result of the ruling is to make our holdings regarding cross-examination of reputation witnesses in *McAdoo* and *Devore* and in this case applicable to opinion testimony just as it is to reputation testimony, albeit on the basis of a narrower rationale. We rule out cross-examination of opinion witnesses with juvenile adjudications, and do so because of the justice system's special interest in maintaining the confidentiality of findings of guilt entered in proceedings conducted in closed courtrooms. Regarding arrests, because of their more public nature in many instances, we think it appropriate to follow the same approach we have taken with respect to

reputation testimony, and allow cross-examination where the witness reasonably can be expected to have learned of the incident through means other than access to confidential court records. We acknowledge readily that a strong argument can be made for treating juvenile convictions in the same manner as juvenile arrests, and allowing cross-examination when the opinion witness could be expected to have learned of them by means other than confidential records, the statutes dealing with confidentiality do not differentiate between convictions and arrests. There are, on the other hand, obvious practical advantages to treating symmetrically the two categories of character testimony, reputation and opinion, and also a basis in judicial policy for attaching greater protection in this respect to that which transpires in a closed courtroom. For these reasons, we have determined to follow the same policies regarding cross-examination with juvenile adjudication and juvenile arrests whether the witness is testifying to opinion or reputation.

We turn last to the safeguards the trial court should employ to see to it that cross-examination with arrests is not misused. We note that courts in a few states have been concerned about whether a defendant's prior arrests should be used at all to cross-examine character witnesses. McCORMICK, *supra*, § 191, at 570 n. 36. In rejecting appellant's argument that there should be a *per se* exclusion of cross-examination about a defendant's juvenile arrests, we recognize that arrests are not necessarily a reliable indication of a defendant's character, and in some instances may have little or no effect on that defendant's reputation or the opinion others hold of him or her. It is nonetheless also true that arrests often shade one's reputation and may affect the esteem in which others hold a person. We therefore decline appellant's invitation to hold that arrests may not properly be used in cross-examining character witnesses.

■ At the same time, we stress that the trial court is obliged to apply several checks against the possible misuse of

either juvenile and adult arrests to cross-examine: first, the trial court must exercise its discretion carefully, especially in balancing probative value against prejudicial effect; second, while abuse of the trial court's broad discretion will not be readily found by this court, we caution that there could be an abuse if cross-examination were permitted where an arrest had been expunged, or it appears for other reasons that there had been inadequate grounds for arrest; further, the government should not be permitted to use an arrest to cross-examine a witness who has given opinion evidence of good character unless the government has a good faith belief that the arrest actually had occurred, and similarly may not question a reputation witness about hearing of an arrest of the defendant unless it has a firm basis for believing that such a report of defendant's arrest had actually circulated (this question being subject to exclusion at the trial judge's discretion, as stated above); [13] next, where there were circumstances that mitigated the basis for arrest, the defense should be allowed to adduce them on redirect, or by extrinsic evidence to an extent appropriate in the discretion of the court; in addition, in the case of arrests of juveniles, the court should exercise its discretion to disallow the cross-examination when the circumstances of the arrest are such that it was unlikely that the witness would have heard of an arrest (this is not to say that a witness' statement that he or she had not heard of it is dispositive of whether there was such a likelihood, for sometimes that very failure impeaches the witness' character testimony); and finally, the court should give an appropriate limiting instruction, normally contemporaneously with the testimony.

In light of the foregoing, we hold that a defendant's juvenile arrests may be used in the cross-examination of character witnesses, subject to the trial court's discretion exercised consistently with the considerations we have discussed here. In this particular case, given the circumstances set out in the division opinion and for the reasons stated above, we affirm.

*Affirmed.*

ROGERS, Chief Judge, with whom NEWMAN and FERREN, Associate Judges, and MACK, Associate Judge, Retired, join, concurring in part and dissenting in part:

I join the majority opinion adopting Federal Rule 405(a) permitting lay character witnesses to testify as to their opinion of a defendant as well as their knowledge of the defendant's reputation. [Majority opinion at 74.]

I am unable to join the majority opinion holding that a reputation character witness may be cross examined by the government concerning the witness' knowledge of a defendant's juvenile arrests. To have a consistent body of law means that the court is limited in the extent to which it can deviate from the legislative policy that juvenile proceedings are generally confidential. D.C.Code §§ 16–2331, 16–2335 (1989 Repl.). That policy, made by Congress in this instance, was made with no less recognition than is suggested in the majority opinion that there is an informal transmission of information among groups with whom a person lives, works or goes to school. [Majority op. at 75] The longstanding policy choice by Congress to treat juvenile proceedings differently than adult criminal proceedings and to maintain so far as possible the confidentiality of such proceedings rather was designed to assure to a category of persons that matters arising out of their actions while under a certain age would not adversely affect them in the

---

**13.** Regarding the trial judge's monitoring of cross-examination, the Supreme Court in *Michelson* noted with approval that

[t]he trial judge was scrupulous to guard [the practice of admitting hearsay reputation testimony from any misuse] in the case before us. He took pains to ascertain, out of presence of the jury, that the target of the question was an actual event, which would probably result in some comment among acquaintances if not injury to defendant's reputation. He satisfied himself that counsel was not merely taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted innuendo into the jury box. 335 U.S. at 481, 69 S.Ct. at 221.

future. The courts in this jurisdiction have long ruled in accordance with that policy in recognition of the fact that juvenile proceedings are "founded upon strong social policy, and their aim is amnesty and oblivion for the transgressions of youthful offenders." *Thomas v. United States,* 74 App.D.C. 167, 170, 121 F.2d 905, 908 (1941). Referring to the time prior to the reorganization of the District of Columbia Courts by Congress in 1970,[1] the United States Court of Appeals for the District of Columbia Circuit wrote

> The primary function of juvenile courts, properly considered, is not conviction or punishment for crime, but crime prevention and delinquency rehabilitation. It would be a serious breach of public faith, therefore, to permit these informal and presumably beneficent procedures to become the basis for criminal records, which could be used to harass a person throughout his life. There is no more reason for permitting their use for such a purpose, than there would be to pry into school records or to compile family and community recollections concerning youthful indiscretions of persons who were fortunate enough to avoid the juvenile court.

*Id.* at 170–71, 121 F.2d at 908–09.

Although juvenile procedures are no longer as informal as described in *Thomas, supra,* 74 App.D.C. at 169 n. 12, 121 F.2d at 907 n. 12, Congress did not retreat from its previous position that an adjudication not subject the youthful offender to the disabilities that arise as a result of a criminal conviction and proceedings involving the offender be confidential. *See D.C.Code* §§ 16–2316(e), 16–2318 (1989 Repl.). In amending the statute relating to proceedings involving juvenile delinquents and other youthful persons as part of the 1970 Court Reform Act, Congress maintained the practice of non public hearings and in addition made limited access to juvenile records greater than under prior law by providing, for example, that law enforcement and fingerprint records and files are confidential, D.C.Code §§ 16–2333, 16–2334 (1989 Repl.), and that juvenile proceeding records can be sealed against even limited access.[2] D.C.Code § 16–2335 (1989 Repl.).

For this reason and for the reasons set forth in Judge Newman's dissenting opinion in the division opinion, *Rogers v. United States,* 534 A.2d 928, 933–36 (D.C.1987), it is readily understandable that the practice at issue today has not previously been approved. As the court continues to clip away at the Congressional policy and purpose, the problems of having a consistent body of law are obvious. *Compare McAdoo v. United States,* 515 A.2d 412 (D.C. 1986) (juvenile adjudications) *with Devore v. United States,* 530 A.2d 1173 (D.C.1987) (juvenile's wrongful acts). If, as the majority opinion implies [Majority opinion at 75, 76 n. 10 & 77], the legislative policy of confidentiality is so far removed from the reality of community life and does not serve important societal interests, then the remedy lies within the legislature and not this court.

Accordingly, I respectfully dissent from Part II of the majority opinion and I concur in the separate opinion by Judge NEWMAN.

NEWMAN, Associate Judge, with whom ROGERS, Chief Judge, FERREN, Associate Judge, and MACK, Associate Judge, Retired, join, concurring in part and dissenting in part:

It is with great pleasure that I join Part II of the opinion of the court which holds we "will henceforth apply the principle embodied in Federal Rule 405(a) and will permit lay character witnesses to testify as to

---

**1.** The District of Columbia Court Reform and Criminal Procedure Act of 1970, Act of July 29, 1970, Pub.L. No. 91–358, 84 Stat. 473 (1970 Court Reform Act), abolished the D.C. Juvenile Court, D.C.Code §§ 11–1501, 11–1589 (1967), and transferred matters within its jurisdiction to the Family Division of the new Superior Court of the District of Columbia. D.C.Code §§ 11–902, 11–1101 (1989 Repl.).

**2.** *See* Lawton, *Juvenile Proceedings–The New Look,* 20 Am.U.L.Rev. 342, 366–71 (1970–71). *See also* Darling, *Youthful Offenders and Neglected Children Under the D.C. Crime Act,* 20 Am.U.L. Rev. 373, 427–28 (1970–71).

their opinion of a party as well as their knowledge of his or her reputation." Slip op. at 75. I have long urged that we abandon the discredited rule holding to the contrary. *See, e.g., Morris v. United States,* 469 A.2d 432, 438–39 (D.C.1983) (Newman, J., dissenting); *Rogers v. United States,* 534 A.2d 928, 933–36 (D.C.1987) (Newman, J., dissenting), *vacated and reh'g en banc granted* (Mar. 8, 1988).

However, for the reasons stated in my dissenting opinion at division in this case, *Rogers, supra,* 534 A.2d at 933–36, I dissent from the majority's holding that a character witness may be interrogated concerning the party's juvenile arrests.